IN RE WILL AND TESTAMENT OF GEORGE S. CARSON.

DAVENPORT BANK & TRUST COMPANY, Trustee; CELIA CARSON et al., Appellees; UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

No. 44618.

942

DECEMBER 12, 1939.

REHEARING DENIED MAY 11, 1940.

Dutcher, Ries & Dutcher, Wayne G. Cook, and Lane & Waterman, for appellees.

H. B. White, Wilson, Clearman & Brant, and Havner, Flick & Powers, for appellant.

STIGER, J.—In April 1929 the will of George S. Carson, deceased, was admitted to probate in the district court of Iowa in and for Johnson county. The American Trust Company of Davenport, Iowa, and Celia Carson, wife of decedent, were nominated executors and trustees under the will. They were appointed executors under the will on April 13, 1929. The United States Fidelity & Guaranty Company is the surety on the bond of the executors and trustees.

In December 1932 the American Trust Company was adjudged insolvent and a receiver was appointed by the district court of Iowa in and for Scott county. In April 1933 the Davenport Bank & Trust Company was appointed successor trustee and executor and this successor and Celia Carson continued to administer the estate as co-executors and trustees.

On February 20, 1933, the board of directors of the American Trust Company passed a resolution resigning from all of its fiduciary offices and positions. On November 7, 1934, an application was filed by the beneficiaries of the trust alleging that by arrangement between Celia Carson and the American Trust Company all of the assets and property of the estate, except the property in the hands of Celia Carson as ancillary administratrix in certain foreign states, passed to the possession of the American Trust Company as trustee and were held by it until a receiver was appointed in December 1932; that the American Trust Company and its officers had ignored a prior order of the court to forthwith file its final report as executor and trustee and make a full accounting; that the American Trust Company had resigned as executor and trustee and that the said trust company was guilty of numerous breaches of trust as executor and trustee and prayed for an order declaring the office of the American Trust Company as executor and trustee under the will of George S. Carson vacant

and that the court enter such order with respect to an accounting by said trust company as it deemed appropriate, reserving jurisdiction of the trust company for the adjudication of any liability.

On November 30, 1934, pursuant to the application, an order was entered removing the American Trust Company as executor and trustee but the court retained jurisdiction over the company for the purpose of final hearing on its final report and accounting.

On November 30, 1934, the American Trust Company filed its final report as trustee and executor under the will of George S. Carson. The trustees and beneficiaries filed objections to the final report. On May 12, 1938, the United States Fidelity & Guaranty Company filed a motion to require the objectors to state their objections more specifically.

On June 17, 1938, Judge Gaffney found that the objections were sufficiently definite and certain and if the motion was sustained it would require objectors to plead evidentiary matters, or require them to state evidence which might amount only to defensive matter for movants and overruled the motion. Appellant filed a petition to set aside this ruling and for a rehearing. The prior order was modified by requiring the objectors to set forth the name of the president of the American Trust Company and the Iowa Southern Utilities Company, and subject to this modification, the petition was overruled.

The United States Fidelity & Guaranty Company then filed a motion to strike the final report of the trustee on the ground that because a receiver had been appointed the officers of the American Trust Company did not have the right, power or authority to make the report and that said final report was void and a nullity; that the authority to make such a report, if one existed, alone rested in the receiver of the American Trust Company.

On September 16, 1938, this motion was overruled by Presiding Judge R. W. Hasner of the 10th Judicial district.

On July 21, 1938, the Fidelity Company filed a motion to strike the objections from the files and to require the objectors to make their objections more specific.

On September 16, 1938, Judge Hasner overruled the motion to strike the objections because it contained the same conten-

tions that were urged in support of the motion of the Fidelity Company to strike the final report of the American Trust Company which had been overruled. Judge Hasner also overruled the motion to make the objections more specific because the same grounds were urged in the motion for more specific statement that had been overruled by Judge Gaffney. Judge Hasner was clearly right in these rulings.

The Fidelity Company appealed from the orders of Judge Gaffney overruling the motion for more specific statement and the petition for rehearing and also appealed from the orders of Judge Hasner overruling its motion to strike the objections from the files and for more specific statement and overruling its motion to strike the final report. The several appeals are consolidated here by agreement of the parties.

I. We will first determine whether the overruling by Judge Hasner of appellant's motion to strike the final report of the American Trust Company was error.

The motion to strike alleged the appointment of a receiver for the trust company on December 28, 1932, and stated that "by virtue of the appointment of said receiver for the American Trust Company no right or authority existed in the so-called American Trust Company, or any person who was an officer of such corporation, to do or perform any act for and on behalf of said corporation after the 28th day of December, 1932; that under the decision of the Supreme Court of Iowa In re Strasser's Estate, [220 Iowa 194], 262 N. W. 137 [102 A. L. R. 117], said officers pretending to act for the American Trust Company and for and on its behalf had no right, power or authority to make such report and that said report is void and is a nullity; that the right and authority to make such report, if one existed, alone rested in the receiver of the American Trust Company."

In August 1933 the Davenport Bank & Trust Company, successor executor and trustee, and Celia Carson filed an application in the receivership of the American Trust Company, a banking corporation, pending in the district court of Iowa in and for Scott county, for an order requiring D. W. Bates, superintendent of banking and statutory receiver of said corporation, to deliver to said executors and trustees all of the trust property belonging to the Carson trust. On August 31,

1933, an order was entered by the Scott county district court granting said application and pursuant to this order the receiver delivered all of the Carson trust property in his possession to said executors and trustees.

Appellant relies on In re Estate of Strasser, 220 Iowa 194, 262 N. W. 137, 102 A. L. R. 117, and In re Estate of Carson, 221 Iowa 367, 265 N. W. 648.

In the Strasser case, the American Trust Company of Davenport, Iowa, was trustee under the will of Pauline Strasser. A receiver was appointed for the trustee and the Davenport Bank & Trust Company was appointed successor trustee. The surety on the bond of the American Trust Company, The United States Fidelity & Guaranty Company, contended that the order appointing the successor trustee was void because the insolvency of the American Trust Company and the appointment of a receiver did not create a vacancy in the office of trustee. The contention of the surety was not sustained and Justice Anderson, speaking for the court, at page 198, states:

"The finding by the court of a condition of insolvency and the appointment of a receiver in the instant case certainly divested the trust company of the control of all of its assets, including property held in trust, and effectually prevented it from further continuing or acting in any fiduciary relation, and prevented it from continuing business as a banking or trust company. * * * We do not think that the Iowa Statutes (chapters 415 and 416 of the 1931 Code) contemplate that a bank or trust company shall continue to administer trusts or act in a fiduciary relation after it becomes insolvent and a receiver is appointed therefor. When a receiver is appointed for a bank or trust company, its affairs, including its relation in the handling of trusts, immediately fall under the direction of the court appointing a receiver. The receiver cannot act as successor trustee permanently, but must retain and conserve the trust funds until successors in trust are appointed. After the finding of insolvency and the appointment of a receiver for a bank or trust company trustee, there is no longer any trustee legally qualified to perform the duties as such, and a vacancy necessarily exists. When a state bank or trust corporation is placed in the hands of a receiver, its capacity to continue to do business and the capacity of its officers and agents

to conduct its affairs cease under the provisions of Code section 9239, and thereafter the receiver becomes the managing agent of the insolvent corporation under direction of the court.''

The holding of the Strasser case that the appointment of the receiver created a vacancy in the office of trustee, divested it of control of the trust assets, and thereafter the trustee was no longer qualified to perform the duties of a trustee and to administer the trust estate; that the capacity of its officers to conduct its affairs ceased under the provision of Code section 9239 does not sustain appellant's proposition that after the appointment of a receiver the American Trust Company nor any officer could not perform *any act* on behalf of the corporation and that the trustee had ''ceased to exist because of insolvency.''

Though the American Trust Company, as trustee, could not, after the appointment of a receiver, perform any duty as an active trustee, could no longer administer the trust, the district court of Johnson county was not deprived of jurisdiction over said trustee, which had resigned and also been removed, by the appointment of a receiver by the Scott county district court, which appointment did not immunize the American Trust Company as trustee from rendering an accounting and making a final report, as fiduciary, pursuant to the order of the district court of Johnson county.

In In re Estate of Carson, 221 Iowa 367, 265 N. W. 648, the United States Fidelity & Guaranty Company, surety on the bond of the American Trust Company, claimed the appointment of the Davenport Bank & Trust Company, as successor trustee, was void because no notice had been given the American Trust Company or interested parties. The court held the appointment was proper and followed the decision in the case of In re Estate of Strasser, 220 Iowa 194, 262 N. W. 137, 102 A. L. R. 117, holding that the office of trustee became vacant on appointing the referee.

Code section 11876 reads:

''11876. Trustees to give bond. Trustees appointed by will or by the court must qualify and give bonds the same as executors, and shall be subject to control or removal by it in the same manner, and others appointed.''

Code section 12069 provides that upon the removal of any executor or administrator, he shall be required by order of the court or judge to deliver to the person who may be entitled thereto all the property in his hands or under his control belonging to the estate.

Code section 12070 reads:

"12070. Probate reports—accounts. Each report of an executor, administrator, guardian, or trustee shall be self-explanatory, so that the clerk or court, from a perusal thereof, may understand the matter in hand without explanations or being compelled to examine or refer to other papers in the case. All accountings must state the debit and credit and show the balances. Guardians' and trustees' accounts must show the amount of interest earned since appointment or last report, and how and upon what security the trust fund is invested. All reports and accounts must be verified."

Code section 12071 provides that each executor or administrator shall, in his final report, set forth etc.

Our statutes contemplate that a trustee upon removal or resignation shall make a complete, final accounting. Appellant does not claim it was unable to make a full and complete accounting. The report filed covers thirty pages of the abstract and purports to be a full, final and complete accounting of the conduct of its office and the property entrusted to it. In filing its final report, the American Trust Company was not continuing to do business as an active trustee and its officers were not conducting its affairs as such trustee; that is, it was not administering the trust but was performing its duty to make a final report upon its resignation and removal.

II. Another assignment is the alleged error of the court in overruling appellant's motion to make the objections to the final report more specific. The grounds of the objections of the final report are, briefly stated, as follows:

"(a) That the American Trust Company continued to hold nonlegal investments which under the law it was required to dispose of within a reasonable time;

"(b) That it purchased certain foreign bonds and other nonlegal securities without prior order of court;

"(c) That it purchased some of these nonlegal invest-

ments from itself or an affiliated banking corporation; and

"(d) That regardless of the nonlegal character of the securities and investments which it held, it was derelict in its duty as executor and trustee in holding them when it knew or ought to have known that they were likely to depreciate in value."

Appellant's brief and argument on this issue is in four divisions.

In division I it is claimed the court erred in failing to sustain ground 15 of the motion to make paragraph 15 of the objections more specific.

Paragraph 15 of the objections to the final report reads:

"15. That irrespective of the nonlegal character of the securities and investments referred to, and particularly the preferred stock of Iowa Southern Utilities Company, the American Trust Company of Davenport, Iowa, was derelict in its duties as executor and trustee in holding the securities hereinbefore referred to when it knew or should have known that they were likely to depreciate in value, and when they could have disposed of the same with little or no loss to the estate and trust, and that said American Trust Company did not exercise that degree of care and judgment required of it in its fiduciary capacity, but on the contrary, held said shares of stock to avoid embarrassing its President and principal stockholder, who was likewise President and the principal common stockholder of Iowa Southern Utilities Company, and that in so doing said American Trust Company failed in its duties to this estate and trust and to the beneficiaries of said trust."

The motion directed to paragraph 15 of the objections is:

"15. That the objectors be required to state their objections, as set forth in paragraph 15 of said objections, more specifically in the following particulars, to-wit:

"(a) To set out in detail in what way, in what manner and in what respects, the said president of the American Trust Company of Davenport, Iowa, and the principal stockholder of the Iowa Southern Utilities Company would be embarrassed by a sale of the securities referred to in paragraphs 3 and 4 of said objections, setting out such detail with reference to

each individual group of securities referred to in paragraphs 3 and 4 of said objections.

"(b) To state specifically the names of the officers of the American Trust Company who failed in their duty in the particulars claimed and alleged in paragraph 15 of said objections.

"(c) To state the date when said wrongful act or acts of dereliction were committed by the officers of the American Trust Company, as set forth and alleged in paragraph 15 of said objections.

"(d) To state whether the president of the American Trust Company of Davenport, Iowa, who is also alleged to be the principal stockholder of the Iowa Southern Utilities Company, joined in and took part in the acts of dereliction which are alleged and set forth in paragraph 15.

"(e) To state specifically the names of each and all of the officers of the American Trust Company of Davenport, Iowa, who joined in or, it is claimed, were responsible for the wrongful acts complained of in paragraph 15 of said objections."

Paragraph "(c)" of the motion will be considered in division IV of this opinion.

The securities and investments referred to in paragraph 15 of the objections consist of foreign bonds, shares in the Iowa Southern Utilities Company and other stock, all of said property having been originally received by the executor and trustee as property of the estate of the decedent. The securities are itemized and described in the objections. Paragraph 15 charges a dereliction of duty in retaining these nonlegal securities. It appears from the record that the American Trust Company had possession of all the trust property other than the property administered in ancillary proceedings, and had the active management of the trust. The retention of the nonlegal securities was solely the act of the American Trust Company in its management of the estate and did not involve a personal transaction between the officers of the corporation and the objectors. The trust company and its officers have equal or better knowledge of which officers were responsible for the alleged dereliction charged and the motion calls for evidentiary facts.

Appellant states: "If these various parties who are officers and employees of the American Trust Company were guilty of wrongdoing they should be named so that by proper pleading they could be made parties to this proceeding to the end that all questions involved may be litigated in one action and thus avoid a multiplicity of suits; and these defendants state that unless said parties are named, this defendant would be required to ask the Court to make all of the officers, employees, and agents of the American Trust Company, from April 13, 1929, to December 28, 1932, parties to this action."

Proper parties and the scope of the action must be determined in the court below.

An amendment to the motion for more specific statement would require the objectors to state specifically each and all of the facts of nonfeasance, misfeasance and malfeasance of which they claim the trustee was guilty and the names of the officers guilty of such acts and the dates of the wrongful acts. The objections clearly state the nature of the acts of the American Trust Company of which objectors complain. The securities which objectors state were wrongfully retained are definitely described.

In this division, appellant alleges the court erred in overruling grounds 12, 13, 16, 17 and 20 of its petition to set aside the order overruling its motion for a more specific statement and for rehearing. The petition states that the trust company was guilty of nonfeasance, misfeasance and malfeasance and was, in effect, an accusation that the corporation and trust officers were guilty of fraud in the management of the estate and is a "blind" or "ambush" pleading and leaves appellant in the dark as to which officers were guilty, and asserts that because fraud is the gravamen of this objection, the specific facts relied on should be alleged. This is a law action pending in the probate court. The trustee is charged, not with fraud, but with a wrongful administration of the estate. Appellant urges that the statement in paragraph 15 of the objections that the shares of stock of the Iowa Southern Utilities Company were retained to avoid embarrassing its president and principal stockholder who was likewise president and principal stockholder of said utilities company amounts to a charge of fraud in holding this stock. We do not agree with this proposi-

tion, but conceding the contention, we think the implication of the statement is too clear to require a more specific statement.

III. Another assignment is that the court erred in overruling the fourteenth ground of the motion for more specific statement, which reads:

"14. To require the objectors to state whether the claimed acts of dereliction or failure to sell the securities set forth in paragraphs 3 and 4 were while Celia Carson and American Trust Company were acting as executors under the Will of George S. Carson, deceased, or while they were acting as Trustees, and whether the wrongful acts complained of in said objections with reference to the securities set forth and mentioned in paragraphs 3 and 4 of said objections were the wrong-· ful acts of said parties acting as executors or as Trustees under the will of George S. Carson, deceased."

Appellant cites the provisions of the will authorizing and empowering the trustee to. "sell, resell, invest, reinvest, manage and control, subject to the approval of the proper court, all of my property, as fully as I could do if living," and contemplating, as claimed by appellant, a distribution of the trust estate in kind. It also relied on Code sections 11955 and 12772.

Code section 11955 reads:

"11955. Procedure prescribed by will. When the interests of creditors will not thereby be prejudiced, a testator may prescribe the entire manner in which his estate shall be administered, may exempt the executor from the necessity of giving bond, and prescribe the manner in which his affairs shall be conducted until his estate is finally settled, or until his minor children become of age."

Said Code section 12772 provides that all proposed investments of trust funds by fiduciaries shall .first be reported to the court or judge for approval, and unless otherwise authorized or directed by the court, or by the will, trust agreement or other document which is the source of authority, the fiduciary shall invest all moneys in certain classes of securities.

The position of appellant is that because of the provisions of the will and said code sections they were justified, as trustees, in retaining the securities. Code section 12772-c2 provides

that any fiduciary may by and with the consent of the court having jurisdiction over such fiduciary or under permission of the will or other instrument creating the trust, continue to hold any investment originally received by him or it under the trust or any increase thereof.

The objections are to the final report of the American Trust Company and to the administration and accounting of said trust company as executor and trustee, and state that the executor and trustee was derelict in the performance of its duties in the manner stated in their objections.

It may be stated here that in the progressive report of the executors filed in July 1930 they stated:

"Your petitioners further represent that said trustees have not qualified as such trustees, believing that under the provisions of said will, the executors being identical with the trustees named in said will, the duties devolving upon said trustees should be performed during the administration of said estate by said persons named as trustees, in their capacity as executors."

In the order approving the report, it was provided that:

"In view of the fact that said estate is not fully administered and that the trustees named in the will of said George S. Carson have not qualified as such, the executors of said estate are hereby authorized and empowered to sell, resell, invest, reinvest, manage, and control the property of the estate until such time as the trustees under said will shall have been duly qualified and a settlement shall have been made between said trustees and these executors."

In their second progressive report, the executors called attention to the order authorizing them to perform the duties incumbent on the trustees and suggested that, as the executor had discharged its duties but that the final report could not be made because of ancillary administrations pending in Minnesota and New Mexico, it would be for the best interests of the estate that the trustees qualify and that all property be turned over to the trustees except the property being administered in the ancillary administrations. In the order approving this report, it is provided that said trustees and executors may, by agreement with the present surety of the executors, provide that the

present executors' bond of three hundred thousand ($300,000) dollars shall cover the bond of both the trustees and the executors, file said agreement and thereupon the present executors' bond shall cover the liability of both the executors and trustees and be in lieu of all other bonds required on the part of either said executors or trustees.

On September 3, 1931, an order was entered fixing the bond of the executor and trustee in the sum of $300,000 which was to be in lieu of all other bonds required of the executor and trustee.

The American Trust Company acted as trustee since the first report of the executor and also acted as executor. The final report of the American Trust Company is its report as executor and trustee and, as stated, the objectors accused the executor and trustee of maladministration. In the trial below they may seek to prove a breach of fiduciary duty by the American Trust Company in its capacity as executor, trustee, or executor, acting as trustee, and should not be required to make an election at this time in which capacity it will seek to prove that the trust company was guilty of a dereliction of duty.

On this appeal we are not called on to pass on the merits of appellant's construction of the will and the provisions of the statutes which it may offer on its behalf in the trial of the case.

IV. Appellant further alleges that the court erred in refusing to sustain grounds 3 to 13 inclusive of its motion for more specific statement. These grounds require the objectors to state the specific dates on which the foreign bonds and other securities should have been sold and the value of these securities on such dates.

Paragraph 5 of the objections states with reference to such nonlegal securities that the trust company without authorization or approval of the court and in violation of its duty of executor and trustee kept and retained said securities until it became insolvent in December 1932.

Appellant states in argument that "unless the approximate date is set out the appellant in this case would be compelled to commence with the day that this will was admitted to probate, to-wit, April 13, 1929, and to be prepared with evidence on every day from that time until the date that this American Trust Company passed into receivership, which was

on the 28th day of December, 1932, three years and nine and one-half months.''

The issue is not the exact dates the securities should have been sold, but is whether the trust company wrongfully retained the securities and, if it is so found, within what reasonable time it should have made disposition of the property. The objectors have the burden of sustaining their affirmative allegations. If the task of meeting the evidence offered by objectors is an onerous one, this fact is not a sufficient reason for compelling objectors to plead their evidence for the benefit of appellant. If the retention was erroneous, the court will, under all the evidence, determine when the securities should have been sold.

V. Another assignment is that the court erred in overruling appellant's motion to make paragraph 6 of the objections more specific by setting out the date when each of the items complained of in said paragraph were purchased by the American Trust Company and whether the American Trust Company purchased the items as executor or trustee.

Paragraph 6 of the objections states that the trust company in violation of its duties as executor and trustee purchased certain nonlegal securities without the authorization or prior approval of the district court.

Appellant submits no argument relative to his requirement that the date of each purchase be set out, but again refers to the broad power given the trustees by the will and claims it is entitled to know whether the investments of nonlegal securities were made by the trust company as executor or trustee. The trust company and its officers have equal or better knowledge of the facts inquired about than the objectors. Appellant may avail itself of any records of the company in the possession of the objectors. See division III of this opinion.

The orders appealed from are affirmed.—Affirmed.

SAGER, HALE, and BLISS, JJ., concur.

MITCHELL, J., concurs in result.

OLIVER, C. J., and MILLER and HAMILTON, JJ., concur specially.

MILLER, J. (concurring specially)—I believe the foregoing

opinion reaches the correct result herein, but am unable to concur in division I, because I think it conflicts with the position taken by us in the case of In re Estate of Strasser, 220 Iowa 194, 198, 262 N. W. 137, 139, 102 A. L. R. 117, wherein we state:

"When a receiver is appointed for a bank or trust company, its affairs, including its relation in the handling of trusts, immediately fall under the direction of the court appointing a receiver. * * * When a state bank or trust corporation is placed in the hands of a receiver, its capacity to continue to do business and the capacity of its officers and agents to conduct its affairs cease under the provisions of Code section 9239, and thereafter the receiver becomes the managing agent of the insolvent corporation under direction of the court."

When the American Trust Company was adjudged insolvent and a receiver was appointed by the district court, this terminated the status of this company to act as trustee, and a vacancy occurred. It seems to me that the capacity of the officers to conduct the affairs of the American Trust Company also ceased, and that they had no authority to report upon or account for this trust. I think that the question should be disposed of upon other grounds.

The Davenport Bank & Trust Company was appointed and qualified as successor trustee May 2, 1933. Thereafter, on May 27, 1933, application was filed to require the American Trust Company to report, and an order was entered directing it to report, both as executor and trustee, and to make a full accounting on its part. This order was apparently ignored and, on November 7, 1934, on application a citation was issued. Following the issuance of this citation, on November 30, 1934, the final report, which appellant now seeks to have stricken, was filed.

At the hearing a stipulation was made from which the court was warranted in finding that, prior to the filing of such report, an attorney for appellant went to Davenport, interviewed the former secretary of the American Trust Company, told him of the order entered in May 1933, requiring the company to report, advised that a citation would issue, stated that he thought the former officers of the company should file a report and persuaded the former secretary to believe it was

their duty to make the report. Following this conversation, the report was prepared and filed.

This final report became the basis for the pleadings in this case. However, appellant, prior to the filing of the report, on November 21, 1934, filed a resistance to the appointment of the Davenport Bank & Trust Company and secured its removal as such trustee. This action on the part of appellant provoked an appeal to this court wherein it was determined that the removal was improper. See In re Estate of Carson, 221 Iowa 367, 265 N. W. 648. On remand of the case in June 1936 the Davenport Bank & Trust Company was reinstated as trustee. From the record it appears that it undertook to prepare and did file objections to the final report on April 25, 1938. Thereafter, on May 12, 1938, appellant filed a motion for more specific statement of such objections, and at the same time filed an application to require the receiver of the American Trust Company to report herein. The application to require the receiver to report was sustained, but, on appeal to this court in certiorari, the order was held to be in excess of the jurisdiction of the trial court. See Bates v. Evans, 226 Iowa 438, 284 N. W. 385.

On June 18, 1938, the motion for more specific statement filed by appellant was overruled and the hearing on the final report was set for August 16, 1938. Appellant then filed a petition for rehearing on its motion, and on rehearing the order was modified, July 7, 1938. An amendment to the objections to comply with the supplemental order was promptly filed July 9, 1938. On July 21, 1938, appellant filed its motion to strike the final report of the American Trust Company together with a motion to strike the objections thereto, and another motion for more specific statement in reference to such objections. Hearing was set for September 6, 1938. On August 10, 1938, appellant appealed from the order of June 18, 1938, and on August 31, 1938, secured an order from the chief justice of this court appointing Judge Hasner to conduct the hearing of September 6, 1938. Judge Hasner conducted such hearing and overruled all of appellant's motions, from which ruling appeal was perfected October 31, 1938. On December 5, 1938, appellant secured from the chief justice of this court an order extending the time to file abstract until March 12, 1939, which

958

had the effect of postponing hearing in this court until the September 1939 term.

Counsel for appellant has been industrious indeed in the course of this litigation. It appears to me that the industry of counsel may be ascribed perhaps to other motives than those of securing a speedy and orderly hearing of this cause, and that the motion to strike the final report of the American Trust Company constituted such departure from the course of procedure to which appellant had committed itself that the trial court was justified in overruling it irrespective of the grounds stated in support thereof.

While, nominally, the American Trust Company appears to be the party in interest on the issues presented by its final report and the objections thereto, in view of its insolvency and the fact that the appellant is the surety on its qualifying bond, as trustee and as executor, obviously appellant is the real party in interest from a financial standpoint. Appellant has a distinct advantage in many respects in having the proceedings to establish liability on its bond conducted before the probate court. With the venue established in the probate court, many matters are of record which would require proof in an independent action on the bond. Appellant can claim advantage from this situation as well as the appellees. This is demonstrated by the fact that, on this appeal from interlocutory orders on motions for more specific statement and to strike, we are confronted with an abstract of 545 pages. The trial court was warranted in determining that, when appellant induced the former secretary of the American Trust Company to file the final report on behalf of the American Trust Company, appellant was desirous of having the proceedings to determine the liability on its bond conducted in the probate court. It filed no objection to such report nor did it attack it by a motion to strike until the report had been on file from November 30, 1934, until July 21, 1938. In the meantime, objections had been filed by the Davenport Bank & Trust Company, after it had come to this court to adjudicate the fact that it was properly appointed trustee. When its objections were filed, appellant, rather than attacking the report, attacked the objections and also sought to have another report filed by the receiver. After appellant was unsuccessful in its effort to make the objections more specific, it sought to remove the basis for the pleadings by filing a motion to strike

the final report as well as a motion to strike the objections to the final report.

In the case of Bookin v. Iowa Southern Utility Co., 221 Iowa 1336, 268 N. W. 50, this court held that a motion to strike and a motion for more specific statement are motions of the same kind, and that one may not follow the other. Under our decision in that case, appellant clearly had no right to file a motion to strike appellees' objections to the final report after appellant had attacked the objections by a motion for more specific statement.

The motion to strike the final report, however, can hardly be classed as the same kind of a motion as the motion for more specific statement of the objections to the report. However, it seems to me that the same considerations, which prompted our decision in the Bookin case, should prompt us to now hold that appellant, having induced the filing of the final report, and having accepted it as a basis for the pleadings on the issues to determine its liability under its bond, should not now be permitted to strike the final report. At the conclusion of our opinion in the Bookin case, at page 1341, we state:

"We know it is a somewhat debatable matter, but to permit the practice attempted to be indulged in here would be to lend our countenance to numberless delays in getting cases tried. Actions are commenced in court to obtain legal rights, to have justice done. Justice delayed is justice denied. Courts have been charged too much with delaying justice, and we cannot believe that the legislature in enacting this change in the statutes intended or contemplated that it would be used as used here. If the party filing the motion is convinced that it is right, and is willing to rest his case upon the ruling upon it, he has a method of doing it. He can stand upon it, permit judgment to go against him, then appeal to this court, and if error has been committed, the case will be reversed. He is fully protected in this way, and the trial of cases is expedited. With a half dozen appeals in one case, it becomes impossible to expedite justice. So taking into account the necessity that speedy disposition of cases be made in court, that a lawsuit may sometime come to an end, we think that the defendant in this case is unjustly attempting to put off the day when the matter can be finally adjusted, and that this should not be permitted. We

might lay down a rule here which would cause people to cease to remember and talk about the mythical Jarndyce case, the Jones County Calf case, in the courts for twenty-five years, and of other instances of litigation in which it has lasted for years and years, before final termination. To put off final decision by tactics of evasion is unjust. Therefore, in accordance with the views herein expressed, the opinion in the lower court is hereby affirmed.''

It seems to me that the language above set forth might well be applied to the situation now before us. To permit appellant to attack the final report of the American Trust Company, the filing of which it induced, by a motion to strike, filed nearly four years after the final report was filed, in view of the other litigation conducted and provoked by appellant herein would seem to be lending our countenance to unnecessary delays in getting this case tried. This action was commenced to obtain legal rights, to have justice done. ''Justice delayed is justice denied. Courts have been charged too much with delaying justice.'' With numerous appeals to this court it becomes impossible to expedite justice. Taking into account the necessity that speedy disposition of cases should be made in court, that a lawsuit should sometime come to an end, that appellant appears to be unjustly postponing the day when this matter may be finally adjudged, that, irrespective of the legal right of the former officers of the American Trust Company to file the final report, the course of conduct pursued by counsel seems to be sufficient to warrant us in accepting the final report and the objections thereto as a proper basis for the pleadings from which the ultimate liability, if any, of appellant is to be determined in the probate court. I am disposed to hold that the trial court's order of September 6, 1938, overruling the various motions filed by appellant on July 21, 1938, was properly entered and that we should not decide the merits of appellant's motion to strike the final report of the American Trust Company, had the circumstances attending its filing been different than those presented by the record herein.

I am authorized to state that OLIVER, C. J., and HAMILTON, J., concur in this opinion.