IN RE ESTATE OF CHARLES LUNDVALL.

CLARENCE LUNDVALL, executor of estate of SAMANTHA LUNDVALL, appellant, v. FLORENCE CHARBONNEAU and ROBERT F. REANEY, administrator of CHARLES LUNDVALL estate, appellees.

No. 47817.

(Reported in 46 N.W.2d 535)

MARCH 6, 1951.

Frank Drake, of Muscatine, W. O. Weaver and G. Graham Waite, both of Wapello, for appellant.

E. S. Simpson, of Morning Sun, and Reaney & Reaney, of Columbus Junction, for appellees.

THOMPSON, J.—Charles Lundvall, aged eighty-three, died intestate, a resident of Louisa County, Iowa, on March 4, 1949.

He left surviving him his widow, Samantha Lundvall, aged eighty, and as his sole heir-at-law his daughter, Florence Charbonneau. Samantha Lundvall qualified as administratrix of his estate on March 11, 1949. After the determination of this case in the lower court, and while this appeal was pending, Samantha Lundvall died, and Clarence Lundvall, executor of her estate, has been substituted in her stead.

Charles Lundvall had been married twice, Samantha being his second wife. It will be no surprise to those conversant with human nature and with the difficulties which so often harass estates of decedents to learn that Florence Charbonneau is a daughter by the first marriage, Samantha being her stepmother. Samantha had also been married before her union with Charles, and by the first marriage she had one son, Clarence, who was reared in the Lundvall home and is known as Clarence Lundvall, and is now the executor of her estate.

Charles and Samantha had been married for fifty-three years. They owned a farm of eighty acres, of which twenty acres belonged to Samantha through inheritance. They farmed it as a single unit and did not attempt to segregate the proceeds. Both of them worked on the farm throughout their married lives. In the early part of the year of 1947 Charles suffered a fall, and there is evidence from which the trial court could find that his head was injured and that thereafter his mentality was not keen, and that Samantha took over the operation of the farm and the business affairs of the couple. Charles Lundvall had both checking and savings accounts in a bank at Morning Sun, Iowa, which had stood in his name alone until the year 1948, when, at the request of Samantha, they were changed to "Charles Lundvall or Samantha Lundvall or the survivor." Charles had also been the owner of five United States savings bonds, standing in his own name. During the same year, 1948, at the request of Samantha, these were reissued in the name of Charles Lundvall, payable on death to Samantha Lundvall. All these actions were taken with the acquiescence of Charles Lundvall, but there was ample evidence from which the trial court could find that Samantha was the instigator of the changes that were made both in the bank accounts and the bonds. Much of the money represented by the bank accounts was withdrawn by Samantha prior

to the death of Charles, and the failure to list these sums in her inventory as administratrix of the estate and her action in listing the bonds for inheritance tax purposes only brought on this litigation.

Florence Charbonneau filed an application to remove Samantha as administratrix on June 20, 1949, and on July 6, 1949, after a hearing, this application was granted by an order revoking the original appointment, which had been made by the court. Robert F. Reaney was appointed as successor-administrator and he qualified as such on July 26, 1949.

Samantha Lundvall filed her final report as administratrix on September 19, 1949. Objections were filed by Florence Charbonneau in which Robert F. Reaney, administrator of the estate of Charles Lundvall, joined. After a full hearing the objections were sustained in so far as that it was determined that Samantha Lundvall must account for the bank accounts and the value of the United States bonds, above referred to, in the total sum of $3362.81; and upon her failure so to do judgment was entered against her in that amount. Hence this appeal, during the pendency of which Samantha died and her son by the former marriage, Clarence Lundvall, as executor of her estate, was substituted in this action.

The caption of this case, as presented by the parties in the record and in the respective briefs and arguments, is somewhat confusing. Actually, Florence Charbonneau and Robert F. Reaney, administrator of the estate of Charles Lundvall, are in the position of plaintiffs, and will be so denominated hereafter; and Samantha Lundvall, now represented by Clarence Lundvall, as executor of her estate, will be referred to as the defendant.

The material issues in the case are well-stated by counsel for defendant. They are two in number: 1. Is the presumption of fraud based on a confidential or fiduciary relationship applicable to the transaction in controversy? 2. What is the nature of the burden of proof cast on the dominant party in a confidential or fiduciary relationship which must be sustained by such dominant party in order to prevail? They will be discussed in that order.

I. The answer to the first proposition is not difficult. The cause was tried in probate and both parties, upon oral argu-

434

ment in this court, agreed that the trial court was therefore the trier of the facts, as in an action at law. Accordingly, if there was any substantial evidence from which it could be found that a confidential or fiduciary relationship existed between Charles and Samantha Lundvall, and if there were facts from which it might be determined that Samantha held the dominant position and that Charles was subservient, the appellate court is foreclosed from going further into those questions. The finding of the trial court thereupon has the force and effect of a jury verdict.

 We are of the opinion that such facts existed here, and having arrived at this conclusion we have no concern with the question as to whether the lower court arrived at the same determination in evaluating the evidence that we would have reached. There was evidence that Charles Lundvall suffered a head injury in a fall in 1947, and from that time on he was less aggressive, less active and less able to look after his business affairs. There is further evidence that Samantha thereupon took charge of the business of the parties and that she took various steps, such as changing the bank accounts, withdrawing them, and having the United States bonds reissued so they were payable to her upon Charles' death. That a confidential relationship, in which one is the dominant and the other the subservient party, may exist between husband and wife is determined by Johnson v. Johnson, 196 Iowa 343, 191 N.W. 353. It is true that in the cited case the parties had not been long married, but this goes only to the weight of the evidence, and has been determined against defendant's contention by the finding of the lower court, with which we cannot interfere.

 Defendant also argues that the situation in regard to the United States bonds is the result of a contract between Charles Lundvall and the Federal Government, which the state courts cannot void. Here defendant cites In re Estate of Murray, 236 Iowa 807, 20 N.W.2d 49. But the trial court did not attempt to void the contract; it merely ordered Samantha to account for the value of the bonds. The Murray case is not in point. Conceding, as we have pointed out we must, that the trial court properly found a confidential relationship during the course of which the dominant party induced the inferior one to execute a contract

with the United States Government which gave the wrongdoer an unfair advantage, it would be a reproach to the law if it could only fold its hands and say that nothing could be done. The solution found by the trial court was proper.

Other matters urged by the defendant upon this branch of the case go no further than to invite us to review the findings of fact below, which we cannot do.

II. Defendant's second point presents a much more difficult question. The trial court in its findings of fact. and conclusions of law said:

"Such being the situation, the burden was cast upon Samantha Lundvall to affirmatively establish that, in the transactions in controversy, she took no advantage of Charles Lundvall, and that he acted voluntarily with freedom, intelligence, and a full knowledge of all the facts. This burden, in my opinion, Samantha Lundvall has failed to meet."

It must be conceded, of course, that while we are bound by the lower court's findings of fact, if it applied erroneous rules of law in arriving at its decision, unless absence of prejudice appears therefrom, we must interfere. It is as though an erroneous instruction had been given to a jury.

The able counsel for defendant say, with much force and persuasiveness, that in placing the burden of proof upon their client the trial court was in error. They contend strongly that they were measured by an improper yardstick and compelled to assume an undue and too heavy burden. It is their thought that under well-established rules the burden of proof, in the sense that it means the burden of persuasion of the trier of the facts, never shifts; that it is only the burden of going forward with the evidence that changes. Assuming this to be so, it is their further contention that, when they have once introduced substantial evidence to show the fairness of the transactions involved they have met this burden; and that at all times the burden of making a case, of showing the lack of fairness and good faith and all other necessary elements, remains with the plaintiffs in the case who first made allegations of fraud, constructive or otherwise. The initial burden here was upon the plaintiffs, who made

affirmative allegations. In re Will of Carson, 227 Iowa 941, 945, 289 N.W. 30.

That there is abundant authority for defendant's position is not open to doubt. See Delaware Coach Co. v. Savage, 81 F. Supp. 293; Harjo v. Collins, 146 Okla. 131, 293 P. 179, 72 A. L. R. 1034; IX Wigmore on Evidence, Third Ed., section 2489; Thayer, A Preliminary Treatise on Evidence at the Common Law, 378, 383; Ladd, Cases and Materials on Evidence, citing the Delaware Coach Company case, supra.

Defendant also cites Beggs v. Metropolitan Life Ins. Co., 219 Iowa 24, 257 N.W. 445, 95 A. L. R. 863. In this case, speaking through Justice Claussen, we discussed the question of presumptions and their effect. Defendant's argument here is that once some evidence is introduced to rebut a presumption it disappears, and the evidence which gave rise to the presumption remains as plaintiff's evidence in the case. It is true that in the Beggs case we said:

"The presumptions are not evidence. The evidentiary facts are the ones from which the presumptions arise. When once established by the evidence, such facts remain in the record, and no matter what other facts the record may reveal, tend to sustain a finding of the fact presumed." (Pages 26 and 27 of 219 Iowa, page 446 of 257 N.W.)

But we also said at page 28 of the same case:

"In every Iowa case to which our attention has been called, in which it has been held that presumption was not available, the nonexistence of the presumable fact was conclusively established, and in some of the cases the court specifically recognizes that with the evidence in equipoise the presumption should turn the decision in favor of the party having the benefit of the presumption. The cases are clear upon the proposition that the nonexistence of the presumed fact must be conclusively established before presumption can be eliminated." And on page 29 is this language: "Consequently, it is our conclusion that the court properly submitted the question of payment to the jury with instructions that possession of the policy raised a presumption that the policy had been delivered as an effective policy, and that the first premium had been paid."

Johnson v. Marshall, 232 Iowa 299, 4 N.W.2d 369, follows the Beggs case, supra, and quotes at length from it. It is true that in the Johnson case the court found no prejudicial error in an instruction which told the jury that if they found the evidence upon the question of ownership of a diamond ring in equipoise, they should indulge no presumption. But it must be remembered that here the appeal was by the defendant, to whom the instruction was favorable.

It is conceded by defendant that in Weber v. Chicago, R. I. & P. R. Co., 175 Iowa 358, 373; 151 N.W. 852, L. R. A. 1918A 626, and Crozier v. Hawkeye Stages, 209 Iowa 313, 318, 228 N.W. 320, we placed the burden of persuasion upon the defendant to show freedom from negligence, in actions brought by passengers against common carriers. This burden arose after a prima facie showing of accident and injury to the plaintiff raising a presumption of negligence. The cases are of interest here only as showing that we have in some circumstances placed the burden of proof in the sense of persuasion upon the defendant, after plaintiff made a sufficient showing to bring about a presumption.

The real difficulty with defendant's position at this juncture arises neither from want of logic nor lack of supporting authority, particularly from the textbook writers. But the proposition urged so forcefully by counsel is no longer open to doubt in Iowa; nor is this court alone in its holding that the burden of proof, as distinguished from the burden of going forward with the evidence, shifts to the defendant in a proper case. The language used by the trial court, as set out above, is no stronger, and no different in effect, than many pronouncements of this court. The point was discussed and the holding reiterated often in Curtis v. Armagast, 158 Iowa 507, 520, 138 N.W. 873, 878, undoubtedly the leading case in this state upon the question of fiduciary or confidential relationships and their effect upon dealings between the parties. There we said:

"The necessity of considering this phase of the law arises most frequently in controversies which grow out of dealings between persons when one occupies fiduciary or confidential relations to the other. As between such persons, a contract by which

the one having the advantage of position profits at the expense of the other will be held presumptively fraudulent and voidable, and the burden is placed upon him who claims the benefits thereof to rebut that presumption by an affirmative showing that such contract was fairly procured without undue influence or other circumstance tending to impeach its fairness."

On page 521 the opinion quotes with approval from 2 Pomeroy's Equity Jurisprudence, Third Ed., section 956:

" 'While equity does not deny the possibility of valid transactions between the parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts upon that party the burden of proving affirmatively its compliance with equitable requisites and of thereby overcoming the presumption.' "

On pages 523 and 524 is cited, likewise with approval, this from Mott v. Mott, 49 N. J. Eq. 192, 200, 22 A. 997, 1000:

" 'If, under such circumstances, a son obtains a conveyance from a parent, the court will not permit it to stand unless such son establishes by abundant proof that the contract was not only free, but fair, and made with the utmost good faith.' "

Also cited with approval and quotations are Davis v. Dean, 66 Wis. 100, 109, 26 N.W. 737, 740, Barnard v. Gantz, 140 N. Y. 249, 35 N.E. 430, and Rickman v. Meier, 213 Ill. 507, 72 N.E. 1121, which seem to hold to the same rule as to burden of proof. Justice Weaver, in Curtis v. Armagast, supra, further points out the reason why the rule places the burden upon the dominant party, when he says at pages 527 and 528:

"In the very nature of the situation, where the parties occupy such intimate relations, it is rarely, if ever, possible to prove the extent to which the weaker or dependent party's action has been influenced by that relationship; hence the burden is properly placed upon him who has profited thereby to make an affirmative showing, not merely of good faith on his part, but of absolute freedom of intelligent action on the part of the grantor."

Curtis v. Armagast, supra, was not the first case in which this court so placed the burden in these circumstances, and it has not been the last, by many. In Reese v. Shutte, 133 Iowa 681, 108 N.W. 525, the rule was announced and applied. It would serve no good purpose to enumerate all of the later cases which declare and follow the same holding, but it may be found, among others, in Pruitt v. Gause, 193 Iowa 1354, 1358, 188 N.W. 798; Johnson v. Johnson, supra; Utterback v. Hollingsworth, 208 Iowa 300, 302, 225 N.W. 419; Merritt v. Easterly, 226 Iowa 514, 530, 284 N.W. 397, 405; Marron v. Bowen, 235 Iowa 108, 112, 16 N.W.2d 14; and In re Guardianship of Munsell, 239 Iowa 307, 317, 31 N.W.2d 360, 365. In Merritt v. Easterly, supra, Justice Bliss, speaking for the court, said:

"Since that relationship existed between the deceased and the appellant, the burden was upon the appellant to rebut the presumption of overreaching on his part, and to affirmatively establish that in his acquisition of property, in the transactions in controversy, he took no advantage of the deceased by reason of their relationship, but that she acted voluntarily with freedom, intelligence and a full knowledge of all of the facts. We have carefully gone through the record and it is our judgment that the appellant has failed to carry this burden."

In the case of In re Guardianship of Munsell, supra, Justice Oliver, speaking for the court, said:

"It is the rule that every transaction between such parties, by which the superior party obtains a possible benefit, is presumed invalid and the burden is upon such party to rebut the presumption of overreaching on his part, and to affirmatively establish that in the transactions in question he took no advantage of the inferior party but that the latter acted voluntarily with freedom, intelligence and a full knowledge of all the facts. Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873."

This line of cases makes it clear that the trial court in placing the burden of proof did only what we have done without exception in all of this class of litigation. His language went no further than the citations above, and these could have been

multiplied many times. Unless, therefore, we are to overrule what has been the established law in Iowa for many years, we cannot sustain defendant's contention. While it is true that in none of the cases on the subject which we have discovered is there a discussion of the distinction between the burden of proof as a burden of persuasion and the burden of proof as meaning merely a shifting of the duty of producing evidence, the language used can admit of only one interpretation. We have repeatedly said that the burden of proof is upon the dominant party to affirmatively establish not only that no advantage was taken of the subservient or inferior one, but that the latter acted voluntarily with freedom, intelligence and a full knowledge of all the facts. Merritt v. Easterly and In re Guardianship of Munsell, both supra.

We hold that in the class of cases discussed in this division, when a confidential or fiduciary relationship appears and there have been dealings between the parties, as soon as these things are shown the burden of proof in the sense of burden of persuasion shifts to the dominant party. We do not overlook the force of the contentions made by counsel for the defendant nor the respectable authority supporting them. But the matter is foreclosed against them, and, we think, not unfairly so. The technical arguments which hold that the burden of proof proper never shifts are overborne by the sound principle that the dominant factor should be called upon to explain and justify the fairness of his actions and to prove that the inferior party with whom he dealt had full freedom and understanding of what he did.

The rule has been so understood for many years by the bench and bar of this state, and there appears no compelling reason why it should now be changed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.