In the Matter of the ESTATE OF Walter CLARK, Deceased.

Ralph E. CLARK, Appellant,

v.

Clarence SWOPE, Appellee.

No. 84–07.

Court of Appeals of Iowa.

Sept. 6, 1984.

D.W. Harris and R. Kurt Swaim, Bloomfield, for appellant.

Michael J. McCarthy, of McCarthy & McCarthy, Davenport, for appellee.

Considered by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

This appeal involves the question of whether three bank accounts held by decedent and Ralph E. Clark should be included in decedent's estate.

The trial judge held that all three accounts were assets of decedent's estate.

We need to first determine the form of ownership of each account. The first account is a savings account, and it will be designated account "A." The second account will be designated account "B."

On February 23, 1979, decedent went alone to the bank to change ownership of

accounts A and B. Decedent's wife had died on February 9, 1979, and her name had been on the accounts along with the decedent's. Decedent signed an authorization for both accounts adding the name of Ralph Clark, his son. The authorizations were substantially in the following form:

Date . . . . . 2–23–79 . . . . .
I hereby authorize the South Ottumwa Savings Bank to add the name of .RALPH. CLARK. as
(a) . . . . . X. . . . . Joint Tenant with Rights of Survivorship.
(b) . . . . . . . . . . .Joint Tenant without Rights of Survivorship.[1]
to my .Checking. account(s) No. . .104926. . and direct said bank to honor all checks, deposits, and/or withdrawals signed by him/her.
Signed . /s/. Walter. Clark .
Designee Joint Tenant . ./s/. .Ralph. Clark. .[2]

The authorization clearly spells out that decedent wanted Ralph to be added to the account as a joint tenant with rights of survivorship. The checked designation clearly stated this wish. "Any language which clearly shows an intent to make the grantees in a written instrument of conveyance or ownership joint tenants is sufficient." *In Re Estate of Miller*, 248 Iowa 19, 21, 79 N.W.2d 315, 317 (1956).

■ Since the right of joint tenancy in personal property as well as in real estate is recognized in Iowa, "it follows that language which is sufficient to effectuate a joint tenancy in a deed will be equally so in personalty such as . . . bank accounts. . . ." *In Re Estate of Stamets*, 260 Iowa 93, 100, 148 N.W.2d 468, 472 (1967).

■ "[L]anguage creating a joint tenancy in a written instrument gives the grantees, or payees, the rights of joint tenants. The most important and well established of these is the right of the survivor to take the whole property, since the right of joint tenancy in personal property as well as real estate is recognized in Iowa." *Miller*, 248 Iowa at 22, 79 N.W.2d at 318. The joint tenancy and survivorship language on accounts A and B is very clear.

The third account designated account "C" was a time certificate of deposit. It shows the depositors to be Walter Clark or Ralph Clark. On the certificate there appears the following language: "Payable to the Registered Holder, or, if Joint Tenant WROS, to either or any such holders, or the survivor or survivors. . . ." The certificate shows an issue date of June 3, 1981. There is no other evidence as to how or with whose money the account was established. There are no words of joint tenancy or survivorship in the designation of depositors.

■ The common-law presumption favoring joint tenancies have been reversed by statute in many jurisdictions, including Iowa. *Hyland v. Standiford*, 253 Iowa 294, 300, 111 N.W.2d 260, 264 (1961). In Iowa, even where ownership is shared there is a presumption against joint tenancy. *Matter of Estate of Allen*, 239 N.W.2d 163, 168 (Iowa 1976). ". . . '[T]here is no presumption conveyances of real estate or transfers of personalty to two or more persons create a joint tenancy with rights of survivorship. Rather the presumption is they create a tenancy in common unless a contrary intent is expressed." *In Re Estate of Stamets*, 260 Iowa 93, 98, 148 N.W.2d 468, 471 (1967) (citations omitted).

■ We agree with the trial court that the language does not create a joint tenancy with rights of survivorship. Decedent and Ralph held account C as tenants in common.

The survivorship language on accounts A and B is clear. "[I]f the survivorship language is clear and unequivocal the signature card is conclusive as to the parties' intent to establish a joint account, and cannot be changed by parol evidence except in a situation involving fraud, duress or mistake. But if the survivor is in a confidential relationship with decedent the burden of proving that the account arrangement was voluntarily established shifts to the

---

1. We are not certain of the legal definition of joint tenancy without rights of survivorship.

2. The second authorization was identical except it referred to savings account No. 630921.

survivor." *In Re Estate of Samek*, 213 N.W.2d 690, 692 (Iowa 1973).

## I. Confidential Relationship

The trial court determined that there was substantial evidence of a confidential relationship between the decedent and Ralph and that the burden was therefore upon Ralph to show that when the joint tenancy arrangements were established that the decedent intended to make Ralph the surviving joint tenant on the accounts. We need first determine if a confidential relationship existed between the decedent and Ralph.

 Although our review is de novo we give weight to the trial court's findings. Swope has the burden to show by clear proof the existence of the confidential relation claimed by him, in which Ralph was the dominate person and decedent the subservient one. *See Luse v. Grenko*, 251 Iowa 211, 214, 100 N.W.2d 170, 172 (1959). A confidential relationship does not arise solely from blood relationship such as between parent and child. The gist of the doctrine of confidential relationship is *the presence of a dominant influence* under which the act is presumed to have been done. The purpose of the doctrine is to defeat and correct betrayals of trust and abuses of confidence. *Luse* at 215, 100 N.W.2d 170, 173 (emphasis added).

The facts presented show decedent went alone to the bank on February 23, 1979, shortly after his wife's death on February 9, 1979, and had Ralph's name put on the accounts A and B. Decedent then went to Ralph's home and had Ralph sign the account cards. There is no evidence that at that time or even at a later date that decedent was incapable of managing his affairs. Decedent and his wife had managed their affairs prior to her death. There is no evidence that at any time prior to the accounts being established in Ralph's name that Ralph had transacted any business for decedent or served in any type of advisory position to his father. Decedent had heart surgery in March of 1979 and was hospitalized. His physical health was frail but there is no evidence of any mental incapacity. The evidence presented by Swope is comprised of after-the-fact statements made by decedent to Swope and his family that he had things set up so Ralph could pay his bills. Ralph objected to the evidence as parol evidence introduced to change a written document.

Cases seeking to establish confidential relationships have frequently been before the Iowa courts, and confidential relationships have been established in the following cases:

Where grantee in a deed was not merely grantor's son; he was also her agent and for nearly 20 years had been entrusted by her with the management of lands comprising practically all her worldly estate and where she also lived in the same house as he; and he spoke to others of the lands as being his, a confidential relationship was found. *Curtis v. Armogast*, 158 Iowa 507, 526, 138 N.W. 873, 880 (1912).

Where nonrelative over 90 years of age maintained mental competency and made own business determination but was nearly blind and confined to her abode and was not as dominant as alleged confident who had for 8 years handled more and more of decedent's business affairs and eventually handled them completely and had possession at her home of all decedent's financial records, a confidential relationship was found. *First National Bank in Sioux City v. Curran*, 206 N.W.2d 317 (Iowa 1973).

Where decedent, age 83 at time of death, had four years before death suffered a head injury in a fall and his mentality was not keen thereafter, he was less aggressive, less active and less able to look after his business affairs; and where his second wife took over business affairs and at her instigation her name was added as joint tenant on certain bank accounts, the court found a confidential relationship between decedent and second wife. *In Re Estate of Lundvall*, 242 Iowa 430, 46 N.W.2d 535 (1951).

Where decedent lived with alleged confident daughter and her husband for six years and where decedent came to the

United States at age 48 and never went to school, could not read or write and spoke only a few words of English; and where daughter handled mother's business which her husband had always handled before his death and daughter accompanied mother when daughter's name was put on accounts, and mother in failing health when transactions occurred, daughter was found to be in confidential relationship. *Luse v. Grenko, supra.*

Where transferer became recluse after husband's death, gave up friends and spent almost all her time at home with blinds drawn to keep persons from spying and transferee accompanied her when she left home, purchased her supplies, collected her rents and deposited them in her bank account, took care of farm lease, transferee found to be in confidential relationship with decedent. *Woolwine v. Bryant,* 244 Iowa 66, 54 N.W.2d 759 (1952).

■ The record here falls very short of the proof offered in the foregoing cases where a confidential relationship was established. The evidence shows only that decedent put Ralph's name on two savings accounts. He told other family members he wanted Ralph to pay bills. He consulted with Swope about this decision. Ralph never paid bills. There is absolutely no evidence in this record of any influence Ralph exerted over decedent or any evidence that Ralph assisted decedent in any way with any business decisions. Ralph saw his father and understandably they were close but this is hardly the evidence sufficient for Swope to meet his burden of proving a confidential relationship.

"[I]t may be said that as a general rule the conferring of benefits by a parent upon a child is presumptively valued. The unfavorable presumption arises only where the child, by reason of its youth and inexperience or other special circumstances, is to some degree under the dominion, control or paramount influence of the parent, or where the child is the dominant personage in that relationship and the parent has become the dependent one, trusting herself and her interests to his advice and guid-

ance." *Curtis v. Armagast,* 158 Iowa 507, 522, 138 N.W. 873, 879 (1912). There is no evidence of such facts here. We hold that Swope has failed to present evidence from which we could find that there was a confidential relationship at the time that Ralph's name was added to the accounts.

■ There being no evidence of a confidential relationship, parol evidence is not admissible to change the joint tenancy contract. However, even if the evidence were admissible and considered, it does not prove that decedent did not intend to establish accounts A and B as joint tenancy accounts.

■ Accounts A and B passed by virtue of the joint tenancy contract to Ralph and are not included in decedent's estate.

**II. Tenancy in Common**

■ Account C is not a joint tenancy account but was owned by decedent and Ralph as tenants in common at the time of decedent's death. Therefore one-half of the account is properly includable in decedent's estate.

**III. Court Costs**

Costs on appeal are assessed two-thirds to Clarence Swope and one-third to Ralph E. Clark, individually.

AFFIRMED IN PART AND REVERSED IN PART.