Mary PUNELLI and Rose Mary Punelli, Plaintiffs-Appellants,

v.

Charles R. PUNELLI, As Officer, Director and Shareholder of Stylecraft Steel Services, Inc., Defendant-Appellee.

No. 83–1385.

Court of Appeals of Iowa.

Dec. 26, 1984.

John P. Roehrick and Patricia M. Hulting of Roehrick & Hassel, Des Moines, for plaintiffs-appellants.

Steven C. Reed of Reed & Lenihan, West Des Moines, for defendant-appellee.

Heard by SNELL, P.J., and SCHLEGEL, and HAYDEN, JJ.

HAYDEN, Judge.

Plaintiffs appeal from a judgment for defendant in an action to void the effects of two deeds on the ground that they were obtained by fraud.

Plaintiffs Rose Mary Punelli and Mary Punelli are, respectively, the widow and daughter of decedent Eugene Punelli. Hereafter Rose Mary will be designated as "plaintiff." Defendant Charles Punelli is decedent's brother.

In the late 1950's defendant operated an iron business. In the early 1960's decedent came into the business with him and took over its management and control. The business was incorporated as Stylecraft Steel, Inc. in 1964. Decedent was at all times the president and majority shareholder of the corporation and managed it completely.

In 1964 decedent and plaintiff purchased the Mancuso property. Although the deed was issued to decedent individually, the property was treated as corporate property. The trial court found that the corporation participated substantially in providing the purchase price, and paid the taxes, mortgage payments, and maintenance of the property. Shortly after its acquisition, decedent and plaintiff mortgaged the property to finance the corporation's move to parcel 2 of the Mancuso property.

In November of 1966 parcel 1 of the Mancuso property was leased to Associate Mailers and approximately three years later was sold to them with a mortgage back, plaintiff and decedent holding the second mortgage.

For several years marital friction had existed between plaintiff and decedent. In March of 1970 plaintiff filed a suit for separate maintenance and decedent cross-petitioned for divorce. Both parties were represented by counsel. On July 10, 1970, a settlement of the parties' differences was obtained and signed in the presence of their attorneys. In this settlement each party agreed not to sign the other's name to checks, plaintiff promised not to interfere with Stylecraft Steel, the homestead was deeded to plaintiff by decedent, their joint interest in M & P Leasing, a real estate holding corporation owned by plaintiff and her sister, was transferred to plaintiff, and plaintiff joined decedent on a deed transferring parcel 2 of the Mancuso property, on which the corporate plant was located, to EFP, Inc., a new corporation formed for that purpose. Decedent held all of the shares of EFP, Inc. On November 11, 1970, parcel 2 was conveyed from EFP to Stylecraft Steel.

Parcel 1 of the Mancuso property was not part of the agreement to dismiss the divorce since it had previously been sold. However, in 1973 the buyer, Associate Mailers, filed bankruptcy. Plaintiff and decedent each filed separate creditor's claims. Parcel 1 was abandoned in the bankruptcy proceedings and Bankers Life Company, the first mortgagee, forclosed. Plaintiff and decedent held the second mortgage and the Small Business Administration (SBA) held a third mortgage. On April 26, 1974, a sheriff's sale was held with the highest bidder being Inland Enterprises, a partnership composed of decedent, defendant, and a third man. However, SBA redeemed the property before the expiration of the redemption period.

As holders of the second mortgage, plaintiff and decedent could redeem over the SBA redemption. On June 5, 1974, decedent called plaintiff and requested that she come to his attorney's office to discuss protecting their interest in the property. At the attorney's office plaintiff and decedent signed three documents: (1) an affidavit asserting that they held a mortgage on the property and had made repairs; (2) an assignment of the second mortgage to Inland Enterprises; and (3) a quit claim deed conveying the property to Inland. Later the same year the property was transferred to Stylecraft Steel Services, Inc., the successor corporation to EFP, Inc.

Decedent died in January, 1975. Plaintiff instituted the present suit alleging that her releases of her interest in parcel 2 on July 10, 1970, and in parcel 1 on June 5, 1974, were obtained by fraud. She requested actual and punitive damages from the subsequent sale of parcel 1. As for parcel 2, she asserted that she and her daughter are the beneficiaries of a resulting or constructive trust.

The trial court held that plaintiff had failed to meet her burden of proving fraud and entered judgment for defendant. On appeal plaintiff maintains: (1) that the trial court erred in finding there was no confidential relationship between plaintiff and decedent which would shift the burden to defendant to prove the fairness of the transactions; and (2) that the trial court erred in holding plaintiff was not a "creditor" or "other person" within the meaning of Iowa Code section 713.6 (1977).

Our review of this action at law is on assigned error. Iowa R.App.P. 4. We are bound by the trial court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1).

**I.** *Confidential Relationship.* If there existed a confidential relationship between plaintiff and decedent, the effect of such a relationship is to raise a presumption of fraud and undue influence and shift the burden to the party seeking to uphold the transaction, defendant in this case, to establish by clear and convincing evidence that the transaction was entered into voluntarily. *In re Estate of Samek,* 213 N.W.2d 690, 692 (Iowa 1973). However, plaintiff has the burden to show by clear proof the existence of a confidential relationship in which she was the subservient and decedent the dominant person. *Luse v. Grenko,* 251 Iowa 211, 214, 100 N.W.2d 170, 172 (1959).

Plaintiff argues that a confidential relationship arises solely from the fact that she and decedent were married at the time of the transactions. We do not agree. A confidential relationship arises "when one person has gained the confidence of

another and purports to act or advise with the other's interest in mind." *Oehler v. Hoffman,* 253 Iowa 631, 635, 113 N.W.2d 254, 256 (1962). The gist of the doctrine is the presence of a *dominant influence* by one person over another. *Luse,* 251 Iowa at 215, 100 N.W.2d at 173. While a confidential relationship may exist between husband and wife, *see In re Estate of Lundvall,* 242 Iowa 430, 434, 46 N.W.2d 535, 537 (1951), and *Nissen v. Nissen Trampoline Co.,* 241 Iowa 474, 484, 39 N.W.2d 92, 98 (1949), every transaction between spouses is not presumed to be tainted by fraud or undue influence where the circumstances do not justify it. *Wilcox v. Hamborg,* 242 Iowa 471, 475, 46 N.W.2d 530, 532 (1951).

In *Lundvall,* the supreme court found a confidential relationship between decedent and his second wife where decedent, age 83 at the time of his death, had suffered a head injury four years before his death. There was evidence that after the injury "he was less aggressive, less active, and less able to look after his business affairs." Decedent's wife took charge of his affairs and on her own initiative added her name as joint tenant to certain bank accounts. *Lundvall,* 242 Iowa at 434, 46 N.W.2d at 537.

However, in *Coffman v. Adkins,* 338 N.W.2d 540, 544 (Iowa Ct.App.1983), this court held there was no confidential relationship between decedent and his wife where decedent had not been incapacitated in any way and his wife acquiesced in his wishes concerning management of financial affairs.

Finally, in interpreting Iowa Code section 597.4, the supreme court has inferred "a legislative intent that commercial dealings between spouses be given no different treatment than those between other parties." *In re Estate of Tollefsrud,* 275 N.W.2d 412, 418 (Iowa 1979). We conclude that transactions between spouses should not be presumed to be the product of fraud absent some showing other than the marital relationship.

In the present case plaintiff did not meet her burden of showing the existence of a confidential relationship. There was no showing that plaintiff placed special confidence in decedent. On the contrary the evidence shows that plaintiff and decedent had experienced marital difficulties for a number of years due to disagreements over business affairs. At all times relevant to this action plaintiff and decedent were represented by separate attorneys. The release of plaintiff's interest in parcel 2 was part of an agreement to dismiss a divorce proceeding in which plaintiff received concessions from decedent. When the buyer of parcel 1 filed bankruptcy plaintiff filed a separate creditor's claim. Furthermore, plaintiff had business experience from the real estate holding company she formed with her sister. All of these facts indicate that plaintiff had business experience, took an active role in the management of business affairs and was not dominated by her husband. Therefore, the trial court did not err in finding that no confidential relationship existed between plaintiff and decedent.

II. *Fraudulent Conveyance.* Plaintiff argues that the trial court erred by not finding that she and her daughter were "creditors" or "other persons" within the meaning of Iowa Code section 713.6 (1977), and by holding there were no "badges of fraud" surrounding the conveyance of parcel 1.

We need not decide whether plaintiff was a creditor or other person within the meaning of the now repealed fraudulent conveyance statute. That criminal statute does not change the burden of proof on plaintiff to show fraud and, therefore, does not affect the outcome of this case.

We conclude that the trial court was correct in holding that plaintiff had not met her burden of showing a fraudulent conveyance of parcel 1.

AFFIRMED.