J. P. HESS, Executor, Appellant, v. J. D. PITTMAN et al., Appellees.

No. 41285.

April 5, 1932.

Salinger, Reynolds & Meyers, for appellant.

W. C. & W. I. Saul, for appellees.

De Graff, J.—Two propositions are relied upon by the appellant for a reversal: (1) That it was error for the court to hold that the presumption of undue influence had been rebutted by the evidential facts; (2) that it was error for the court to hold that declaration of the deceased relative to what he said to third parties as reasons for deeding the property in question to the Pittmans (defendant-appellees) was evidence of any kind to rebut the presumption that the deed had been procured by an abuse of the fiduciary relation between the grantor and the grantee.

It is elementary that upon proof of the existence of a

fiduciary relation between grantor and grantee, the burden rests upon the grantee to overcome the presumption arising from such relationship. It is claimed by the plaintiff-appellant that the relationship shown to have existed between the decedent Fitz and the appellee J. D. Pittman was such as to raise a presumption that the deed in question was procured by the exercise of undue influence and to place upon the defendant-appellees the burden of showing that it was not so procured; and further that the evidence on the part of the defendants is insufficient to rebut that presumption or to meet that burden. On the other hand, the defendant-appellees contend that the burden of affirmatively proving undue influence is upon the plaintiff appellant and that there is no such proof; and further that even if the burden of proof is upon the defendants to prove that the deed was not procured by the exercise of undue influence, that burden has been met.

It appears from the record that David Fitz was the title holder of a certain quarter section of Carroll County, Iowa, land, and that on the 20th day of July 1925 Fitz executed his will which was duly witnessed and subsequently admitted to probate. In said will, *inter alia,* the testator devised and bequeathed to five certain named persons, (his nephews and nieces) $1000 each, and all the rest, residue and remainder of his estate, of which he died seized, he devised and bequeathed to Jesse Pittman, one of the appellees herein, and nominated J. P. Hess the executor of his last will and testament.

It further appears that on the 24th day of June, 1929, David Fitz executed the deed in question, which in words and figures reads as follows:

"Know All Men by These Presents: That David Fitz, single, of Carroll County and State of Iowa in consideration of the sum of One Dollar, in hand paid by J. D. Pittman of Carroll County and State of Iowa, do hereby sell and convey unto the said J. D. Pittman, the following described premises situated in the County of Carroll and State of Iowa, to-wit: The Southeast Quarter (SE¼) of Section fourteen (14), Township eighty-four (84) North, Range thirty-three (33) West of the Fifth P. M., of Iowa, reserving however, to the grantor herein, named, David Fitz, the use, possession, rents, profits and control of said prem-

ises during his lifetime. And I do covenant with the said J. D. Pittman that I hold said premises by good and perfect title; that I have good right and lawful authority to sell and convey the same; that they are free and clear of all liens and incumbrances whatsoever, and I covenant to warrant and defend the title of said premises against the lawful claims of all persons whomsoever. And the said David Fitz hereby relinquishes all right of dower in and to the above described premises. Signed this 24th day of June, A. D. 1929.

"David Fitz."

(Duly acknowledged June 24, 1929, before W. W. Anderson, a Notary Public in and for County of Greene, State of Iowa, with his notarial seal affixed.)

On April 8, 1931, there was an order of court permitting the institution of the instant suit, such order not passing upon the validity of the claim of the plaintiff-appellant, nor upon the question whether the conveyance by deed was effective, but leaving that question to be decided in the instant case.

The defendant-appellees in their answer to plaintiff's petition deny that the deed in question was procured by undue influence or fraud, and aver that the execution and delivery of said deed was the voluntary act of the grantor Fitz based on a valuable consideration; admit that the defendant Pittmans are in possession of the quarter section of land referred to in plaintiff's petition, and aver that they (Pittmans) are in such possession as owners; allege that in addition to the consideration named in the deed there was a further oral promise that they (Pittmans) were to make a home for the grantor Fitz during his lifetime and that said oral promise has been fulfilled.

In the written opinion filed by the trial court in this case it is said:

"The ultimate question is as to the weight of the evidence; whether the facts and circumstances shown by the defendants (appellees) are sufficient to rebut the presumption against them and to satisfactorily show that the deed was not procured by undue influence."

The plaintiff-appellant's evidence in support of the claimed relationship between the decedent Fitz and J. D. Pittman is

found in the testimony, in this case, of O. G. Claus, the sole witness offered on behalf of the plaintiff-appellant on this appeal. The testimony of witness Claus consisted of admissions claimed to have been made by the appellee Pittman on the ancillary hearing on March 3, 1931, when Pittman was summoned into court and examined by counsel for the executor Hess by virtue of the provisions of Section 11925, Code, 1927. Such admissions were testified to by Mr. Claus, who was present at the ancillary examination and heard Mr. Pittman's testimony. The said testimony was given by the witness under timely objections. The admissions in question were to the effect that at all times Pittman acted for the decedent Fitz in practically all of his business; that he took charge of decedent's money and the proceeds of the farm which the Pittmans were occupying; collected all moneys due the decedent and paid out for Fitz what he owed for interest, taxes and other expenses; that the decedent advised with and had implicit confidence in Pittman and relied upon what Mr. Pittman told him; that the Pittmans had given to Fitz certain rent notes which Fitz had left in the hands of his banker and which notes he had requested the banker to deliver to him, which were delivered and destroyed by him; that Fitz had concealed from the named legatees in his will that he had executed the deed in question; and that he did not place it of record during his lifetime. It is shown that the legatees, his nephews and nieces named in the will, never contributed anything to the comfort or welfare of Fitz. ·

The record discloses that the appellee Pittman moved onto the quarter section of land in question in 1924 under a lease with the owner, David Fitz. Fitz lived with the Pittmans from March 1, 1924, until he died, to wit, January 30, 1931. It is shown that the relations between Pittman and Fitz were always amicable and that Pittman furnished a good home for Fitz as long as the latter lived. It is conclusively shown that Fitz was a man of strong will, level-headed, and one who could not be easily influenced, and at all times he was capable of conducting his own business affairs. As heretofore stated, the deed in question was executed on the 24th day of June, 1929. This deed was prepared at the request of Fitz by one Anderson, a notary public. Anderson testified:

"It was executed before me. Sometime prior to the execution, Mr. Pittman called at the bank and told me that Mr. Fitz wanted me to come out and make a deed sometime when I was out that way, and a little later on, I was out there and saw Mr. Fitz and he told me what he wanted. * * * I prepared the deed at my office and drove out to the farm. I am not a notary in Carroll County, so Mr. Hiatt, Pittman and myself drove over the line into Greene County where Fitz signed the deed and there I took the acknowledgment. I think it was done in the car. After Fitz signed the deed he handed it back to me. I handed it back to him and he gave it to Pittman and Pittman gave it to me and told me to put it in safe-keeping in the vault of the bank. I told Mr. Fitz to deliver the deed to Pittman, so he handed it to Mr. Pittman and Mr. Pittman handed it to me. I told Mr. Hiatt, in the presence of everybody, that he should impress this transaction on his mind. I don't know that anyone told me what or how to prepare the deed. In Mr. Fitz's conversation with me I think he said he wanted to make a deed and wanted to retain his life interest in the land. He told me who was to be the grantee and what property was to be conveyed. I didn't talk to anybody about the deed after I talked to Mr. Fitz."

It may be observed that Fitz had lived with the Pittmans for more than five years before executing the deed in question to Pittman, and it follows necessarily that Fitz had ample opportunity to reflect on the value of the care and attention he received at the hands of the Pittmans and after due consideration determined that he desired to recompense the Pittmans for said services by giving them a deed to the farm, subject to a recorded mortgage of about $14,000.

 After said deed was executed and delivered, Fitz continued to live with the Pittmans for nearly two years and there is no evidence that during that time he regretted the making of the deed or attempted to rescind his action, but on the contrary spoke, concerning his act, to several persons with approval of what he had done. One Perigo testified that he had known Fitz for 29 years; that during the summer of 1929 Pittman was farming a part of the land and that he saw Fitz two or three times a week; that Fitz told Perigo that he had got rid of his farm and

that he had given a deed to Jesse Pittman; that they (Pittmans) were good to him, gave him a good home and that he wanted them to have the land. One Logan testified that he was working for Pittman in the spring of 1929 and living on the same farm with Mr. Fitz; that one day in a conversation Fitz told him of deeding the farm to Pittman; that he (Fitz) had lived with the Pittmans; that they had given him a good home and that he wanted them to have the farm, all he had; so he gave them a deed. One White testified that he had done carpentry and concrete work on the farm for Mr. Fitz in 1927; that Fitz hired him and directed the work and that Pittman paid him. There can be no question, under this record, that Fitz at all times knew what he was doing. One Caywood testified that he had known Fitz twenty or twenty-five years and that during the last five years he had seen him once or twice a week and that he saw him the night before he died. This witness testified: "If he (Fitz) didn't have a good mind, nobody did." This statement was made in response to a question concerning the mental condition of Fitz. The evidence is not sufficient in character to sustain the claim of undue influence on the part of the Pittmans over Fitz.

Solemn instruments affecting the title to real estate are not to be disturbed unless upon such proof as clearly and convincingly establishes that such instruments are not the free and voluntary act of a person possessed of sufficient mentality to have executed the same intelligently. The burden of proof is upon the plaintiff to prove the undue influence and the mental incapacity of the grantor. See Dean v. Dean, 131 Iowa 487; Reeves v. Howard, 118 Iowa 121; Brackey v. Brackey, 151 Iowa 99. It is said in Steen v. Steen, 169 Iowa 264, l. c. 279:

"In the absence of undue influence or fraud, a party in the possession of his faculties has a right to make a gift or a conveyance of his property upon any consideration that he may fix, except as against his creditors. An agreement to support and care for the grantor during his life is a sufficient consideration to support a deed, even though it turn out that the value of the property conveyed largely overpaid for the support of the grantor."

In Utterback v. Hollingsworth, 208 Iowa 300, l. c. 308, it is said:

"Before the deed can be cancelled for undue influence, it must appear from satisfactory evidence that the instrument does not express the will or purpose of the maker, but rather that of another. It must appear that the act is not the free, intelligent, and voluntary act of the grantor, but that his will was overcome, and the will of another substituted."

See, also, Coughlin v. St. Patrick's Church, 201 Iowa 1268.

If it is conceded, *arguendo,* that a fiduciary relation existed between the grantor and grantee, it must be borne in mind that the evidence of undue influence is not established, and the only result of the claimed testimony is a presumption arising from the claimed fiduciary relationship. It is said in Albaugh v. Shrope, 197 Iowa 844, l. c. 850:

"The fact that one, by kind and considerate treatment, induces an affectionate regard on the part of another, raises no presumption of fiduciary or confidential relations, as the terms are used in this connection, in the absence of some showing that by this means a dominant influence was obtained by the one over the other. Affection on the part of the donor toward the recipient of his bounty, is a most natural, proper, and often an impelling motive for his benefaction. Its operation has never been held to be undue influence, nor its existence, without more, to raise a presumption of undue influence."

Upon the conclusion of all the testimony, the trial court ruled that the defendant-appellees (Pittmans) had satisfactorily met the burden resting upon them and dismissed the petition of plaintiff. With this ruling and decision we discover no reason to disturb the finding and the decree entered thereon.—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, and ALBERT, JJ., concur.