ALICE M. WOOLWINE, appellee, v. DAISY BRYANT et al., appellants.

No. 48043.

(Reported in 54 N.W.2d 759)

September 16, 1952.

Rehearing Denied November 14, 1952.

W. C. Hanson, of Jefferson, and Loth & Melton, of Fort Dodge, for appellants.

Charles E. Hird, of Jefferson, and Rider & Bastian, of Fort Dodge, for appellee.

Hays, J.—Plaintiff-appellee is the grantor in a quitclaim deed executed in 1944. Defendants-appellants are the grantees, excepting Verle Bryant, who is the husband of defendant Daisy Bryant. This action is to cancel the deed and for an accounting, the petition alleging fraud, undue influence, mental incapacity and a breach of a confidential relationship existing between plaintiff and defendant Daisy Bryant. The trial court granted the relief prayed, basing its decree upon the sole ground of a breach of a confidential relationship. From that portion of the decree, which voided the deed, this appeal is taken.

That equity takes cognizance of transactions between parties occupying a fiduciary or confidential relationship and will grant relief where such relationship has been abused is well recognized. A confidential relationship is said to exist when one has gained the confidence of another and purports to act or advise with the other's interest in mind. Where such a confidential relationship is found to exist between a grantor and a grantee a presumption against the validity of the conveyance arises, and the burden of upholding same, as to its fairness, rests upon the grantee. Proof offered to overcome this presumption must be clear and convincing. Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873; Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Wagner v. Wagner, 242 Iowa 480, 45 N.W.2d 508; 26

C. J. S., Deeds, sections 193, 208; 16 Am. Jur., Deeds, sections 40, 392 and 402; Restatement of the Law, Trusts, section 2b.

I. That a confidential relationship existed between plaintiff-grantor and defendant-grantee, Daisy Bryant, at the time the deed was executed is not seriously denied by the defendants, and the record abundantly sustains the existence thereof.

Plaintiff is the widow of Harry Woolwine, who died in 1941. The grantees are the sisters and brother of the said Harry Woolwine. During their married life plaintiff and her husband were active in the church and visited back and forth with their friends. There was an unusually close friendship between them and the grantees, which continued until in 1948. During this time plaintiff was the owner of the property covered by the deed in question. While she had previously managed her properties herself, after her marriage she turned this over to her husband, although she received the rentals therefrom and deposited them in her own private bank account. Plaintiff appears to have always been of a retiring nature, and following the death of her husband she became virtually a recluse. She gave up her church connections, ceased seeing her friends and spent most of her time within the four walls of her home. She conceived the idea that people were spying upon her and kept the window blinds drawn.

Following Harry Woolwine's death Daisy Bryant was the one to whom plaintiff turned. It was Daisy Bryant who accompanied her when she left the home. It was Daisy Bryant who ran her errands, purchased her supplies, collected the rentals from the farm and deposited them to plaintiff's account in the bank. When a new lease was to be executed on the farm it was Daisy Bryant who took care of it, although plaintiff signed the lease. In 1942, arrangements were made at the bank for Daisy Bryant to write checks upon plaintiff's bank account. At the trial, plaintiff testified: "I did depend on her for help. She was the only one I had to depend on." This was the general situation that existed in 1944 when the deed in question was executed. It was an absolute conveyance, containing no reservations or agreements for support. It conveyed plaintiff's home and all of her income-bearing property.

The trial court found that a confidential relationship existed; that Daisy Bryant was the dominant party and had the burden

of showing, by clear and convincing proof, the fairness of the conveyance. In this we find no error.

II. In support of the conveyance and to show that the transaction was fair between the parties the record shows the following additional facts: Just prior to Harry Woolwine's death he requested Daisy to help Alice, plaintiff, whenever requested to do so. It was at plaintiff's request that Daisy became her confidant and helper. In 1928, Maudia Woolwine accompanied plaintiff, who was ill, to a hospital in Des Moines. Upon the return trip Maudia was injured to such an extent as to leave her an invalid. Plaintiff and her husband felt a moral obligation on account thereof and they, at least, discussed the idea of leaving Maudia their property upon their death. In 1942, plaintiff executed a will by which she gave to the three grantees named in the deed virtually the same property included in the deed.

As to the circumstances surrounding the making of the deed in 1944 the record is not too clear. Plaintiff, at the trial, denied all knowledge of the deed, and what facts appear in the record are found in the testimony of Daisy Bryant. It is very sketchy. Plaintiff told her "to have the deeds made out, then she would be sure it went this way." An attorney prepared the deed, but at no time did plaintiff see or discuss the same with him. There is testimony to the effect that plaintiff and Daisy discussed the income from the property and that it was to go to plaintiff as long as she lived. However, an examination of the record convinces us that this conversation was in reference to the will and its effect, not to the deed. In 1945, there was a discussion as to Don Woolwine renting part of the farm. This would require additional buildings and Daisy said that they would erect the building. Plaintiff then said: " 'In that case the deed should be recorded. It is to go to you anyway.' " The deed was recorded but Don Woolwine did not become a tenant and no buildings were erected except as paid for from plaintiff's funds. In 1947, an account was opened in the names of the three grantees, into which went the income from the farm. In 1948, a power of attorney was prepared by an attorney. This gave Maudia complete control over the property although it provided that all the pro-

ceeds should be used for the exclusive benefit of the plaintiff. It stated that plaintiff had a life estate in the farm. As was the case with the deed, plaintiff never discussed this instrument with the attorney who prepared it. It was Daisy who contacted the attorney. It was signed by plaintiff at her home before her banker who had been asked to take the acknowledgment. What, if anything, was said or done at that time, other than the affixing of the signatures, does not appear. In 1947 and 1948, when new leases on the farm were made, they were not signed by plaintiff, but by the three grantees in the deed. In July 1948 plaintiff was committed to the state hospital at Clarinda, Iowa, as a dementia praecox case, and released in 1950. There is the usual conflict of testimony as to plaintiff's mental condition. While it does not necessarily follow that because plaintiff was an institutional case in 1948 she was mentally deranged in 1944 when the deed was made, it is clear that plaintiff was mentally ill at that time.

While it is true, as claimed by the appellants, that the material time is in 1944, when the deed was executed, and much of the testimony as to events subsequent thereto is material only upon the accounting issue, it does have a bearing upon the relationship of Daisy Bryant toward the plaintiff from the date of Harry Woolwine's death in 1941.

While no actual fraud or direct evidence of undue influence appears in the record, we think the answer to the case is well stated in the words of the late Justice Evans, who in Johnson v. Johnson, 196 Iowa 343, 348, 349, 191 N.W. 353, 355, said:

"It is a rare case where the dominant individual in a fiduciary relation can sustain a gift to himself by the one who is dependent upon him. Whereas the defendant had assisted her husband in his few matters of business before his illness, she had now, by his illness, become his sole dependence. If someone else had sought to obtain a conveyance of his property, she would have been his independent adviser, and would have protected him against ill advised action. Inasmuch as she became the beneficiary of this transaction, he was necessarily deprived of her help and advice. In such a case, equity inquires, Who was his helper? Did he have any? Did he have independent advice, legal or otherwise? If his wish had been to refuse the gift, was

there anyone to stand for him and to put forward the refusal? It is incumbent upon the defendant to make some answer to these questions."

Daisy Bryant was plaintiff's confidant and sole contact with the outside world. The deed she executed was an absolute conveyance of her worldly goods without provision for her care in the future, and without consideration, or, at least, an adequate one. At no time did plaintiff have the aid of independent advice. It is true, as contended by appellants, that no restraint was exercised; that plaintiff and Daisy Bryant did not live together in the same household, and she could have had independent advice had she wanted it. But, under this record, the curtain which plaintiff drew about herself following the death of her husband deprived her of being a free agent just as effectively as physical restraint would have done. It is to protect the servient party rather than to punish the dominant one that relief is granted in this type of case.

The trial court held, and correctly so, that defendants' burden of overcoming the presumption of fraud had not been successfully sustained.

III. One other question is presented. It is appellants' theory that even assuming the deed to be invalid as to Daisy Bryant, it is valid as to Don and Maudia Woolwine, who admittedly did not stand in a confidential relationship to plaintiff and were innocent beneficiaries. Cases cited by appellants are where the one who stood in the confidential relationship was not a beneficiary in the conveyance and are not parallel cases. To so hold would be to have equity act to punish the wrongdoer rather than to protect the one upon whom the wrong has been perpetrated. The rule here applicable is that the presumption of fraud cannot be evaded by giving interests to third persons instead of reserving them to the one who exercises the undue influence or who is presumed to do so. Good v. Zook, 116 Iowa 582, 88 N.W. 376; 16 Am. Jur., Deeds, section 41; 26 C. J. S., Deeds, section 56(d).

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.