JAY C. OEHLER, plaintiff, v. HELEN B. HOFFMAN et al., defendants-appellees, FRANK FRAUENHOLZ et al., defendants-appellants.

No. 50509.

FEBRUARY 6, 1962.

Emil G. Trott and Robert W. Jansen, both of Iowa City, for appellant Frauenholz.

Edward W. Lucas, of Iowa City, for appellants Hunzinger.

Leff & Leff, of Iowa City, for appellants Vodicka, Stagg, Tolan and Carson.

Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, for appellees Hoffman.

GARFIELD, C. J.—This is a suit in equity between Helen B. and Leal Hoffman, wife and husband, and beneficiaries under the will of Barbara Kranz, deceased, to determine the validity of a deed from Barbara to the Hoffmans of her home in Iowa City. Following trial to the court the deed was upheld and the beneficiaries under the will have appealed. We affirm the decision.

The deed was prepared by plaintiff, Jay C. Oehler, an Iowa City attorney, and executed by Mrs. Kranz March 11, 1958, while she was a patient in an Iowa City hospital with a broken hip. An escrow agreement, also prepared by Oehler, was signed by him and Barbara at the time the deed was executed. It provided Oehler was to keep the deed until after the grantor's death and then deliver it to Helen B. and Leal Hoffman. Also it was agreed

"this deed was * * * placed in the hands of the escrow agent * * * for the sole purpose of insuring that proper delivery * * * shall be made to Helen B. and Leal Hoffman after my death."

Oehler took the deed and agreement and kept them until after Barbara died March 15, four days later. Beneficiaries under Barbara's will resisted, in the probate proceedings, delivery of the deed to the Hoffmans, who in turn insisted on delivery pursuant to the agreement. Oehler then brought this suit, naming as defendants the Hoffmans and the testamentary beneficiaries, asking that validity of the deed be determined. Pursuant to stipulation of all parties Oehler deposited the deed in court and was discharged from liability pending determination of its validity as between the grantees (Hoffmans) and the beneficiaries under the will.

The beneficiaries-appellants assert the deed is invalid upon four grounds: 1) A confidential relationship existed between the grantor and grantees which renders the deed invalid; 2) It was subject to recall and therefore not effectively delivered; 3) It was in violation of an oral agreement between Barbara and her deceased husband under which she obtained the property from him and 4) Barbara lacked capacity to execute the deed. The trial court held none of these grounds was established. We consider them in the above order. Appellants say the first of these grounds is probably their strongest.

I. It is perhaps unnecessary to repeat what we have so frequently said as to the law applicable to appellants' claim the deed is invalid because of the alleged confidential relation between the grantor and grantees. However we will restate the basic rules. Under our decisions, if it is clearly shown a confidential relationship existed, at the time a deed is made, between the grantor and grantees in which the latter were the dominant persons and the former the subservient one, a presumption arises the deed was procured by fraud or undue influence which the grantees must rebut by clear, satisfactory and convincing evidence. Luse v. Grenko, 251 Iowa 211, 214, 100 N.W.2d 170, 172, and citations. See also article by Professor Richard S. Hudson, 9 Drake Law Review 3, 14–17.

We have been slow to define the precise limits of a

confidential relationship. It is clear it may exist although there is no fiduciary relation. It exists when one person has gained the confidence of another and purports to act or advise with the other's interest in mind. It does not arise solely from blood relationship. The gist of the doctrine of confidential relationship is the presence of a dominant influence under which the act is presumed to have been done. Purpose of the doctrine is to defeat and correct betrayals of trust and abuses of confidence. Luse v. Grenko, supra, and citations.

That a person by kind and considerate treatment induces an affectionate regard on the part of another raises no presumption of confidential relation, as the term is used in this connection, in the absence of some showing that by this means a dominant influence was obtained over the other. Groves v. Groves, 248 Iowa 682, 693, 82 N.W.2d 124, 131, and citations.

II. The trial court held a confidential relationship was not clearly shown here. Although our review is de novo we give weight to the trial court's findings. Groves v. Groves, supra, and citations at page 692 of 248 Iowa, page 130 of 82 N.W.2d; Luse v. Grenko, supra. When this is done we feel we are not justified in reaching a contrary decision upon this issue.

III. We will summarize such of the facts as give a fair indication of the record. When the deed was made the grantor was 83. Her husband died in February 1957. His will left the home to her. The couple was childless. Most of the appellants are nephews or nieces. One is the surviving spouse of a deceased nephew and two others are their children. Mrs. Kranz was a second cousin of Mrs. Hoffman and the latter's godmother. Hoffman was a real-estate broker. The Hoffmans lived in Iowa City. As stated, Mrs. Kranz was in the hospital with a broken hip in March 1958. A pulmonary embolism also developed. On March 3 she underwent surgery on the hip. Unquestionably she was seriously ill on March 11 when Mrs. Hoffman called Oehler to the hospital. The fair inference is the call was made at Mrs. Kranz' request.

Oehler was attorney for Mr. and Mrs. Kranz from 1951 on. There is no evidence he was attorney for Mr. or Mrs. Hoffman. As requested, Oehler went to the hospital as soon as possible. Mrs. Kranz told him she wanted to change her will to leave her

home to the Hoffmans. Mrs. Hoffman was in the hospital room at the time but took no part in the conversation. Oehler felt it would be better to carry out Mrs. Kranz' plan by means of the deed and escrow agreement and she agreed to it. Oehler went to his office, prepared the deed and agreement there and took them to the hospital where they were executed.

An important consideration on this issue is that Mrs. Kranz had the benefit of the independent advice of her attorney. Barber v. Powell, 248 Iowa 785, 793, 82 N.W.2d 665, 670; Luse v. Grenko, supra, 251 Iowa 211, 219, 100 N.W.2d 170, 175. It is also important that Mrs. Kranz, before she went to the hospital, at a time when neither Mr. nor Mrs. Hoffman was present, had discussed with Oehler giving the home to the Hoffmans. It is reasonable to conclude the deed was made to carry out this pre-existing intent rather than through any abuse of confidence on the Hoffmans' part or mental incapacity of the grantor. Groves v. Groves, supra, 248 Iowa 682, 695, 82 N.W.2d 124, 132, and citations. See also 43 Iowa Law Review 425, 427.

Mr. Hoffman as a broker sold Mr. Kranz' farm of 247 acres for $600 an acre, with settlement March 1, 1956, receiving a commission of about $4000, much less than the going commission for such a sale. There is no evidence the sale was not authorized. After the sale Mr. and Mrs. Kranz asked Hoffman to help invest the money. He then assigned to them a first mortgage he held on real estate and received a check therefor of $9037.50. Hoffman wrote the check and Barbara signed it. The check was for the amount owing on the mortgage, without profit to Hoffman. Mr. Kranz made another investment with part of the proceeds from the farm sale without consulting Hoffman about it until afterwards.

Mr. Kranz was bedfast about the last year he lived. Mrs. Kranz did not drive a car. One or both of the Hoffmans did many errands for the Kranzes at the latter's request, such as buying groceries for them. When expense was incurred for one or both of the Kranzes, one of the Hoffmans wrote a check for the amount and Mrs. Kranz signed it. She did not write a great deal. Between January 2, 1956, and November 14, 1957 (about 22½ months), 48 such checks were written. All were written at Mrs. Kranz' request and were for small amounts, mostly $5 to

$30, except the large check given for the mortgage. Some were for cash advanced by Mr. or Mrs. Hoffman at the request of Mr. or Mrs. Kranz. There is no showing the Hoffmans profited from any of these checks.

Mrs. Kranz and Mrs. Hoffman talked to each other by telephone nearly every day. Mrs. Kranz placed some of the calls, Mrs. Hoffman others. Mrs. Hoffman went to the Kranz home three or four times a week. When Mrs. Kranz broke her hip her housekeeper notified Mr. Hoffman by telephone when she was unable to get his wife. Mrs. Hoffman took Mrs. Kranz to the hospital and at the latter's request spent a good deal of time there during her stay of about two weeks. She arranged for the nurses and signed as the responsible relative. When death came Mrs. Hoffman had the body sent to the funeral home to which Mrs. Kranz wanted it to be taken.

Mrs. Hoffman frankly testifies on cross-examination "she would ask us quite a few things about helping her with her ordinary household and business affairs; * * * She didn't depend on some of the other relatives that I know of. Leal and I were the only ones she did depend on. I advised her about the housekeeper and household bills and helped her write checks. I kept her books for her household bills."

The above is a sufficient indication of the record. Although there is some evidence appellees were the dominant persons in a confidential relationship with the grantor at the time the deed was made, we are not persuaded the showing is sufficiently clear to justify a reversal on this issue. Such a conclusion would be based in substantial part on suspicion and conjecture.

We think appellants' claim of confidential relationship is less strong than a like claim in Barber v. Powell, 248 Iowa 785, 82 N.W.2d 665, and Groves v. Groves, 248 Iowa 682, 82 N.W.2d 124, in which a deed was upheld. See also the other precedents cited at the end of Barber v. Powell.

There is clearly insufficient proof the deed was procured by actual fraud or undue influence of the Hoffmans.

█ █ It is suggested the deed was without consideration. An executed, delivered deed is not invalid merely because it is without consideration. Want of consideration is a ground for avoidance of an executory contract but not, as between the

parties thereto, of an executed conveyance. Groves v. Groves, supra, and citations at page 697 of 248 Iowa, page 133 of 82 N.W.2d; Barber v. Powell, supra, at page 793 of 248 Iowa, page 670 of 82 N.W.2d.

Sours v. Colvin, 244 Iowa 40, 55 N.W.2d 462, is the most recent case of this kind in which relief was granted that appellants cite. We feel the evidence there was stronger than in the present case. The vendor there acted without independent advice and the instruments were drawn by an attorney strange to her, selected by the purchaser. Then too the vendor's mental condition was considerably worse than Mrs. Kranz'. We have frequently said the decision in controversies of this kind depends largely upon the facts of the particular case. Barber v. Powell, supra; 43 Iowa Law Review 425, 426.

IV. Appellants' contention the deed was subject to recall and delivery was therefore ineffective cannot be accepted.

██ ██ Of course delivery is essential to the validity of a deed. We have held several times an effective delivery may be made by placing the deed with a third person, without reserving the right to recall it, with instructions to deliver to the grantee upon the grantor's death. The effect of thus placing the instrument with the third person is to reserve a life estate to the grantor, with title immediately passing to the grantee, but the latter's right to possession is postponed until the grantor's death. Brandt v. Schucha, 250 Iowa 679, 687, 688, 96 N.W.2d 179, 184, and citations.

However, where the grantor reserves the right to recall the deed, as in Brandt v. Schucha, attempted delivery by placing it with a third person is ineffective.

The written escrow agreement here reserves no right to recall the deed. And there is no evidence the grantor desired to, or did, retain such right. On the contrary, she wanted to be sure proper delivery of the deed to the Hoffmans was made after her death, just as the written agreement provides. Oehler testifies there was no discussion on Mrs. Kranz' part other than delivery of the deed under the escrow agreement—"I don't know that I had any arrangement with her other than the agreement itself states."

Sole basis for the claim the deed was subject to recall is

Oehler's testimony, in substance, that if Mrs. Kranz survived her illness it was possible her purpose to give the property to the Hoffmans might be accomplished by remaking her will and, in such event, the deed might be returned to her. This testimony is not based on anything Mrs. Kranz or the witness said on March 11, assuming evidence thereof would be competent notwithstanding the written agreement. It is merely Oehler's opinion of what might happen upon a future contingency. It is not evidence the grantor reserved the right to recall the deed.

"Our own and other precedents agree the intent of the grantor is the controlling element in the matter of delivery." Jeppesen v. Jeppesen, 249 Iowa 702, 707, 708, 88 N.W.2d 633, 636, and citations. It is clear Mrs. Kranz intended a valid delivery of this deed without any reservation of control thereover.

V. We must also disagree with appellants' claim the deed is invalid as in violation of an oral agreement between the grantor and her deceased husband under which she obtained the property from him.

Appellants sought to establish this claim by the testimony of Oehler who prepared the last will of each of the Kranzes in February 1956. He says when terms of the will were under discussion Mrs. Kranz told her husband she wanted to do something for the Hoffmans, Kranz said he had given them $1000 in his will but would give them *each* $1000 and that would take care of the Hoffmans so far as the Kranz wills were concerned, Mrs. Kranz indicated her agreement with this. Kranz' will bequeathed $1000 to each of the Hoffmans which was paid and Mrs. Kranz' will contained no provision for them.

However, Oehler also testifies Kranz made no statement that this is all that could be done for the Hoffmans and Barbara should do nothing for them in the future. Also each of the Kranz wills provides: "This is not a joint, mutual or reciprocal will. It is not made in consideration of any will by any other person *or as any reservation or restriction of any right of revocation or change by codicil or otherwise of any other will.*" (Emphasis added.) Oehler says he explained to the Kranzes the purpose of such a provision was that either one could write a new will. Oehler also testifies that in the prior will of Kranz the home went to Barbara—"He had always stated it was to go to her." He says

too that when Barbara consulted him about changing her will to provide that the home should go to the Hoffmans he was not unwilling to make the change because of any supposed agreement between her and her deceased husband.

We will assume, without so deciding, the validity of the oral agreement appellants plead, if established by sufficient proof, and disregard the quoted provision of each will. (In connection with this provision see In re Estate of Croulek, 252 Iowa 700, 107 N.W.2d 77; see also In re Estate of Roberts, 240 Iowa 160, 163, 164, 35 N.W.2d 756, 758, and citations.) Certainly proof of such an agreement must be clear and satisfactory. We have uniformly required such proof in many cases involving alleged mutual wills. In re Estate of Lenders, 247 Iowa 1205, 1213, 78 N.W.2d 536, 541, and citations; Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 608, 609, 106 N.W.2d 637, 640, 641, and citations.

The evidence, to which we have referred, falls considerably short of clear and satisfactory proof of the claimed oral agreement. Indeed the evidence is rather to the effect such an agreement was not made. If there were such an oral agreement made in Oehler's presence as alleged, it is strange it was not reduced to writing and that the provision above quoted was included in the wills. In re Estate of Lenders, supra, 247 Iowa 1205, 1217, 78 N.W.2d 536, 543.

Nor may it be said Kranz devised the home to his wife in consideration of such an alleged oral agreement by her, rather than because he always wanted her to have it in any event. We may observe too there is neither pleading nor proof of any agreement by Mrs. Kranz to devise the home to any of the appellants. If the oral agreement as alleged by them were made and were valid, Mrs. Kranz would not have violated it by a good faith disposition of the property to anyone she desired to have it other than the Hoffmans.

██ ██ VI. It does not appear Mrs. Kranz lacked capacity to execute the deed. On this issue appellants had the burden to show by clear, satisfactory and convincing evidence that at the time the deed was made she was incapable of understanding in any reasonable manner the nature of the transaction and its consequences and effects upon her rights and interests. Groves v.

Groves, supra, 248 Iowa 682, 694, 82 N.W.2d 124, 131, 132, and citations.

The nurse who attended Mrs. Kranz from 3 to 11 p.m. at the hospital testifies she knew everyone who came to see her and introduced them to the witness, her talk was completely rational and intelligent, she liked to be read to and told the nurse what to read, she and the nurse played cards once or twice and she taught the witness how to play. No narcotics or sedatives were administered after March 3 when surgery was performed (eight days before the deed was made). Oehler says Mrs. Kranz told him she wanted the property to go to the Hoffmans and wanted to be sure the deed would be delivered after her death.

The claim of incapacity to make the deed rests mainly on Oehler's testimony it was his judgment Mrs. Kranz would have difficulty in understanding a revision of her will. Consequently he advised the deed and escrow agreement. However, this evidence seems to be based, in substantial part, on Mrs. Kranz' serious physical illness, not on mental incapacity. Apparently Oehler did not hesitate to prepare the deed and agreement out of any fear his client was mentally incompetent.

The showing of mental incapacity here appears to be less strong than in Groves v. Groves, supra, 248 Iowa 682, 694, 695, 82 N.W.2d 124, 132, and several precedents there cited in which relief on a like issue was denied.

Concededly Mrs. Kranz was seriously ill. Her mental capacity was perhaps impaired to some extent by her weakened physical condition and age. As stated, she was 83 and she died four days later. But this deed carries out her wishes. And we are not persuaded, upon any of the grounds alleged by appellants, they should not be carried out.—Affirmed.

All JUSTICES concur except LARSON, J., who takes no part.