Wilber MOORHEAD, Conservator of the property of Lillie Moorhead, Plaintiff,

now

Wilber Moorhead, Executor of the Estate of Lillie Moorhead, Deceased, Substitute Plaintiff-Appellant,

v.

Hazel E. MILLER and Andrew Miller, Defendants-Appellees.

No. 53346.

Supreme Court of Iowa.

Oct. 14, 1969.

John Donahey, Panora, for plaintiff-appellant.

Edward S. White, Carroll, and Richard L. Hasbrouck, Guthrie Center, for defendants-appellees.

STUART, Justice.

The conservator of the property of Lillie Moorhead brought this action in equity to set aside a deed to a 160 acre farm from his ward to defendant, Hazel Miller, and asking for an accounting of the income therefrom. He also seeks the return of the proceeds from certain bonds and bank accounts alleged to have been received by defendants from his ward. The action is based on constructive fraud alleging the ward's mental incapacity and the undue influence of defendants while in a confidential relationship with the ward. The trial court held plaintiff failed to establish the mental incapacity of the ward at the time of the transactions in question and failed to prove the existence of a confidential relationship. The appeal is limited to the trial court's failure to find a confidential relationship. Although our review is de novo, we cannot justify a contrary decision here when we give weight to the trial court's findings.

The law in this field has remained virtually the same since Curtis v. Armagast, 158 Iowa 507, 520–523, 138 N.W. 873, 878–879. It was clearly and succinctly summarized in Oehler v. Hoffman, 253 Iowa 631, 634, 113 N.W.2d 254, 256. If it is clearly shown a confidential relationship existed at the time of the transactions between two parties in which the dominant person gained an advantage over the subservient one, a presumption of fraud or undue influence in the transaction arises which the dominant party must rebut by clear satisfactory and convincing evidence.

A confidential relationship does not arise solely from blood relationship, but exists where one person has gained the confidence of another and acts to his own advantage while purporting to act or advise with the other's interest in mind.

I. The question here is whether the evidence shows the existence of a confidential relationship between Lillie Moorhead and her daughter Hazel Miller in which Mrs. Miller was the dominant party.

Wilber Moorhead and Hazel Miller are the only children of Jerry and Lillie Moorhead. Mr. Moorhead died June 27, 1956. At that time Lillie Moorhead was 76 years old. Wilbur was 57. Hazel was 53. Mr. Moorhead left all of his property consisting mostly of a 120 acre farm and $8300 in cash and bonds to his wife. Mrs. Miller was named executrix of his will. The estate was closed July 11, 1957.

On September 24, 1958 Mrs. Moorhead conveyed the farm to Mrs. Miller by warranty deed with no reservations. The deed was recorded the same date. During 1958 Mrs. Moorhead purchased U.S. Government E bonds of a face value of $5000 (cost $3750) in the names of Mrs. Moorhead and Mrs. Miller. They were paid August 1, 1963 at Mrs. Miller's request. On September 20, 1961 Mrs. Moorhead withdrew $7000 from savings and remitted $3000 to Mrs. Miller by money order. On December 9, 1961 Mrs. Moorhead signed a written instrument cancelling a $2000 note executed by Wilber and his wife. In May 1963 she surrendered a $1000 insurance policy on her life for its cash value of $775.

In October 1963 Mrs. Moorhead accompanied by Mrs. Miller applied for old age assistance. Wilber was contacted and learned of these transactions at that time. He was appointed conservator of his mother's property in February 1964 and shortly thereafter commenced this action. Assets remaining in Mrs. Moorhead's name at that time consisted of a $500 time deposit and $1500 in two bank accounts.

In determining whether the transfers to Mrs. Miller were the result of her undue influence or the free choice of Mrs. Moorhead, we must look to the evidence relating to Mrs. Moorhead and her relationship with her daughter.

After the death of her husband in 1958 Mrs. Moorhead worked as a housekeeper. She sought employment through the Guthrie County Board of Social Welfare and cared for older people. She did her work well. In addition to general housework she ordered the groceries and planned the meals. She continued in this type of work until she suffered a slight stroke in January 1963.

She was a high school graduate and handled her own finances, collected her wages, made bank deposits and wrote her own checks. She kept records of her income and expenses. She was very conservative and increased her savings accounts from her earnings and social security payments.

She was a strong minded woman and could be obstinate at times. Witnesses for both parties testified she could not be easily influenced.

Dr. Todd, who acted as her physician from October 1955 until July following her stroke in January 1963, testified she was a very positive type of individual who had her own ideas and in his opinion she was of sound mind throughout the period she was his patient.

There is no evidence of decreased mental capacity prior to October 1965 at which time she was examined by Dr. Nicoll. He testified she was mixed up and confused but clean and pleasant; at that time she had senile dementia, a mental condition that gradually develops over a period of years and is likely to be present in a person over 70 years of age; and a person developing senile dementia would be more susceptible to suggestions than otherwise. No opinion was expressed by Dr. Nicoll as to her mental condition during the period of time in question here.

The evidence is not sufficient to establish a confidential relationship in which Mrs. Miller was the dominant party. Wilber testified Mrs. Miller helped their mother manage her business affairs after her husband's death and that she relied on Mrs. Miller to take her around about her business affairs. Mrs. Moorhead did not drive a car. Wilber and his wife testified it appeared his mother relied on and had confidence in Mrs. Miller's help and guidance in business matters. No specific examples were given.

A public assistance worker in Cass County testified Mrs. Miller told her she had been helping her mother with her affairs since 1956.

A bank employee testified Mrs. Miller came into the bank with the mother more often than Wilbur did. In the majority of instances Mrs. Moorhead was alone. It was an exception when her daughter, son-in-law or son came with her.

Mr. and Mrs. Gittens leased the farm from the fall of 1956 to the fall of 1959. He testified: "I met Hazel Miller and Andy Miller and Lillie Moorhead in connection with farm business such as fencing or seeding. Two or three times a year they came to the farm and I was over at Andy Miller's place of residence a couple of different times, to see Mrs. Moorhead. In the discussions with Lillie Moorhead and Hazel Miller and Andy Miller relative to the operation of the farm it seems as though I always talked with Lillie but I think that anything that was decided it appeared like it was more or less among the three of them, I will say it that way."

From September 24, 1958 Mrs. Miller had title to the farm and received the income therefrom.

Both Mr. and Mrs. Gittens testified it appeared to them Lillie Moorhead had trust and confidence in and relied on Hazel Miller.

We believe this evidence of a confidential relationship is not as strong as that found in Oehler v. Hoffman, 253 Iowa 631, 113 N.W.2d 254, Barber v. Powell, 248 Iowa 785, 82 N.W.2d 665, or Groves v. Groves, 248 Iowa 682, 82 N.W.2d 124, in which deeds were upheld.

As plaintiff failed to establish a confidential relationship in which Mrs. Miller was the dominant party, no presumption arises that the transactions resulted from undue influence. The trial court reached the correct result.

Affirmed.

All Justices concur.