**FIRST NATIONAL BANK IN SIOUX CITY, Executor of the Estate of Margaret Crosby, Deceased, Appellee,**

v.

**Anna CURRAN, a/k/a Mrs. James Curran, Appellant.**

**No. 55373.**

Supreme Court of Iowa.

March 28, 1973.

Kindig, Beebe, McCluhan, Rawlings & Nieland, Sioux City, for appellant.

Wilson, Rhinehart & Bikakis, Sioux City, for appellee.

UHLENHOPP, Justice.

This case involves the validity of transfers of bank deposits into joint tenancy by Margaret Crosby to her confidante, Mrs. James Curran.

Margaret Crosby was born in 1871 in Nebraska and died in 1969 in Sioux City, Iowa. She never married and left no close relatives. She was an intelligent person of strong will; one witness testified that she was "a very genteel Christian woman, by the standards of today a little old-fashioned, she didn't have many wants, she was a charitable woman, cheerful and very appreciative."

By 1961, when she was 90, Miss Crosby's eyesight was almost gone. She was blind in one eye, had a cataract in the other, and could only see objects. In 1966 she had surgery for the cataract. Her sight in that eye improved but remained very poor. Otherwise she was healthy except for the infirmities of advanced age. She lived in the geriatric ward of St. Joseph's Hospital in Sioux City. When that ward was later closed, she lived in a rest home.

In about 1961, Mrs. James Curran took care of another patient in the same geriatric ward, and became acquainted with Miss Crosby. As years passed, Miss Crosby came to confide in Mrs. Curran. Whereas Miss Crosby was close-lipped with others about her affairs, she eventually took Mrs. Curran completely into her confidence. After the other patient died in 1964, Mrs. Curran began taking care of Miss Crosby's business affairs.

Early in 1964, Miss Crosby decided to make her will and had it prepared by (then) Attorney C. F. Stilwill. She executed the will and Mr. Stilwill and Mrs. Curran witnessed the execution. In the will Miss Crosby gave her property to various charitable uses and named as executor the First National Bank in Sioux City (the bank). At her death her estate amounted to approximately $83,352, not counting about $29,367 involved in this suit.

With the passing of time, Mrs. Curran, in consultation with Miss Crosby, handled more and more of Miss Crosby's affairs and eventually handled them completely. Mrs. Curran even had possession at her home of Miss Crosby's financial records. Miss Crosby retained her mental powers but reposed complete trust in Mrs. Curran. She made a number of gifts of money to Mrs. and to Mr. Curran, and to others.

A substantial portion of Miss Crosby's assets were in bank deposits. Between January 11, 1967, and March 12, 1968, when Miss Crosby was between the ages of 96 and 97 years, five of those deposits were changed from the name of Margaret Crosby to the names of Margaret Crosby and Mrs. James Curran as joint tenants with right of survivorship. The transfers were made at the request of Miss Crosby, through Mrs. Curran. They were signed by Miss Crosby in her room in the presence of Mrs. Curran and Mr. Curran. The transfers were effected at the banks by Mrs. Curran. All of the funds in the accounts originated with Miss Crosby.

After Miss Crosby's death, her will was admitted to probate, and the bank was appointed executor. The bank demanded the transferred deposits from Mrs. Curran, but she placed them in her name alone.

The bank then commenced the present suit in four divisions to recover the deposits from Mrs. Curran. Division I sought a writ of replevin, division II asked for accounting, division III alleged a constructive trust, and division IV requested reformation of the titles to the accounts. The bank demanded a jury on division I.

After a motion to dismiss by her was overruled, Mrs. Curran answered, denying in general the four divisions. She demanded jury trial.

The bank replied and in addition moved that divisions II, III, and IV be tried in equity. Mrs. Curran resisted the motion. The district court ruled that division II be tried by ordinary proceedings but that divi-sions III and IV be tried by equitable proceedings.

Thereafter, the bank dismissed divisions I and II without prejudice. Over Mrs. Curran's objection, the suit proceeded to trial in equity on divisions III and IV.

After trial, the trial court held that a constructive trust existed as to the transferred deposits together with interest which had been declared on them, and rendered decree for the bank on division III. Mrs. Curran appealed.

Mrs. Curran asserts several propositions in this de novo appeal, but we find four issues to be determinative. First, did the district court erroneously transfer divisions III and IV to equity? Second, did oral testimony regarding the alleged constructive trust violate the parol evidence rule? Third, did a confidential relationship exist between Miss Crosby and Mrs. Curran? And fourth, did Mrs. Curran show by clear, satisfactory, and convincing evidence that the transfers were valid?

I. *Transfer to Equity.* The first issue involves two subsidiary issues. Were divisions III and IV cognizable in equity? How does a litigant joining legal and equitable causes secure trial by equitable proceedings of the latter?

 (a) Constructive trusts and reformation of instruments are recognized heads of equity jurisdiction; such relief is exclusively equitable in nature. 54 Am. Jur. Trusts § 565 at 440, § 566 at 441; 45 Am.Jur. Reformation of Instruments § 2 at 584; 90 C.J.S. Trusts § 454b at 871; 76 C.J.S. Reformation of Instruments § 1 at 327.

(b) Joinder of legal and equitable causes is not forbidden by our present rules of civil procedure, but our statutes still recognize two kinds of civil proceedings—ordinary and equitable. Code 1973, § 611.3. See Iowa Const. Art. V, § 6 ("The District Court shall be a court of law and equity, which shall be distinct and separate juris-

dictions. . . ."). When an action involving law and equity causes is commenced by ordinary proceedings, as this one was since division I was replevin, either party is entitled to have the issues exclusively cognizable in equity tried by equitable proceedings. § 611.10. The bank so moved as to divisions II, III, and IV, and the district court properly sustained the motion as to divisions III and IV. Since divisions I and II were subsequently dropped, we need not inquire whether the court was right in refusing to order division II tried by equitable proceedings. Neither need we consider the proper sequence of trial as to divisions I and II, on one hand, and III and IV, on the other. The issues of fact as well as of law on the remaining divisions III and IV were triable to the court. Klopp v. Chicago, M. & St. P. Ry., 156 Iowa 466, 136 N.W. 906; Hobart v. Hobart, 51 Iowa 512, 1 N.W. 780; see Frank v. Hollands, 81 Iowa 164, 46 N.W. 979.

The trial court properly tried divisions III and IV by equitable proceedings.

II. *Parol Evidence Rule.* Mrs. Curran contends that the joint tenancy deposits constituted three-party contracts among herself, Miss Crosby, and the respective banks, and she cites, among other decisions, Hyland v. Standiford, 253 Iowa 294, 111 N.W.2d 260. She says, therefore, that the transfers by Miss Crosby could not be invalidated by parol evidence.

 But in suits to declare constructive trusts or to reform instruments, such as we have here, the chancellor looks behind the documents to the actual transactions, and the parol evidence rule does not forbid him from doing so. Perkins v. City National Bank, 253 Iowa 922, 114 N.W.2d 45; Luse v. Grenko, 251 Iowa 211, 100 N.W.2d 170; 9 Wigmore, Evidence, § 2423 (3rd ed.). See also Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870; McManis v. Keokuk Savings Bank & Trust Co., 239 Iowa 1105, 33 N.W.2d 410; In re Estate of Murdoch, 238 Iowa 898, 29 N.W.2d 177.

The parol evidence rule did not require exclusion of the evidence adduced.

III. *Did a Confidential Relationship Exist?* We thus come to the merits of the case. The trial court held, first, that a confidential relationship existed between the two women and second, that Mrs. Curran did not sustain her burden of upholding the transfers of the deposits into joint tenancy.

 The Iowa law in this area stems mainly from Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873. There the court stated the doctrine of equity that if a person comes to repose trust in another so that the other has influence over such person, and the two are thereby not at arm's length, equity will regard transfers by such person to the other as presumptively invalid and cast upon the other the burden of upholding the transfers. The court said (158 Iowa at 520–521, 138 N.W. 873 at 878):

Though strictly of differing signification, the phrases "fiduciary relations" and "confidential relations" are ordinarily used as convertible terms and have reference to any relationship of blood, business, friendship, or association in which the parties repose special trust and confidence in each other and are in a position to have and exercise, or do have and exercise, influence over each other.

This relationship of confidence was defined thus in Dibel v. Meredith, 233 Iowa 545, 549, 10 N.W.2d 28, 30:

Confidential relationship is a very broad term and is not at all confined to any specific association of the parties to it. In law it has been defined or described as any relation existing between the parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. In its broadest connotation the phrase embraces those multi-

form positions in life wherein one comes to rely on and trust another in his important affairs.

A confidential relationship arises whenever a continuous trust is reposed by one person in the skill and integrity of another, and so it has been said that all the variety of relations in which dominion may be exercised by one person fall within the general term "confidential relation".

■ In the present case, Miss Crosby had grown very old and no longer possessed the vigor of her younger years. She was largely confined to her abode. In addition, she had little sight. She grew more and more dependent on, and developed more and more trust in, Mrs. Curran. The trial court found that a confidential relationship clearly existed, and we agree. Luse v. Grenko, 251 Iowa 211, 100 N.W.2d 170; Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759; In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535; In re Guardianship of Munsell, 239 Iowa 307, 31 N.W.2d 360; Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Johnson v. Johnson, 196 Iowa 343, 191 N.W. 353.

■ Mrs. Curran contends that since Miss Crosby retained her mental faculties and determination, Mrs. Curran could not be considered to be the dominant one of the two. True, Miss Crosby did retain her mental competency and did make her own decisions on business generally—although this transaction, between Miss Crosby and her trusted friend, was not an ordinary business matter. But Mrs. Curran's contention about dominance misapprehends the import of our decisions. By the very nature of a "confidential relationship," one person has achieved influence over another. The two individuals are not dealing at arm's length. By reason of the trust which has developed, the one who reposes confidence is not on guard; he is exposed; he relies on the other; and the other thus has influence he would not otherwise pos-

sess. This is the dominance in confidential relations of which the decisions speak, and it is the essential ingredient which must be shown and which the evidence discloses here. Cases such as the present one, founded on confidential relationships, do not require a showing that the confidant actually stood over the other or in fact bent the will of the other to the confidant's wishes. Woolwine v. Bryant, 244 Iowa 66, 71, 54 N.W.2d 759, 762 ("deprived her of being a free agent just as effectively as physical restraint"). Mrs. Curran's contention confuses cases based on proof of actual undue influence or fraud with the present class of suits. The distinction between the two kinds of cases is pointed out in Utterback v. Hollingsworth, 208 Iowa 300, 225 N.W. 419.

A confidential relationship was clearly shown.

■ IV. *Did Mrs. Curran Sustain Her Burden of Proof?* When a confidential relationship is shown, the person in whom the trust is reposed is not merely required to go forward with the evidence; he has the burden of persuasion to uphold the transfers. In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535. His burden is heavy. He must produce "clear, satisfactory and convincing evidence." Moorhead v. Miller, 171 N.W.2d 295 (Iowa). He is required to prove "entire good faith on his part and free, voluntary, and intelligent action on the part of the grantor". Curtis v. Armagast, 158 Iowa 507, 519, 138 N.W. 873, 878. The court stated in Merritt v. Easterly, 226 Iowa 514, 530, 284 N.W. 397, 405:

Since that [confidential] relationship existed between the deceased and the appellant, the burden was upon the appellant to rebut the presumption of overreaching on his part, and to affirmatively establish that in his acquisition of property, in the transactions in controversy, he took no advantage of the deceased by reason of their relationship,

but that she acted voluntarily with freedom, intelligence and a full knowledge of all of the facts. . . .

The courts must scrutinize with jealous vigilance transactions between persons sustaining relations of trust and confidence, to the end that the dominating member shall conduct himself with uberrima fide—the utmost good faith.

■ While the transfers Mrs. Curran effected at the banks were requested by Miss Crosby, we think Mrs. Curran's showing on the whole issue of the validity of the transfers is not clear, satisfactory, and convincing. See Johnson v. Johnson, 196 Iowa 343, 349, 191 N.W. 353, 355 ("The burden is not met by simply showing that, at the time of the execution, he said that it was all right, or that he was glad of it. The same influence which induced the execution would likewise induce just such remarks."). Mrs. Curran has not by clear, satisfactory, and convincing evidence, proved "entire good faith" on her own part or "free, voluntary, and intelligent action" on the part of Miss Crosby.

We are particularly impressed by Miss Crosby's lack of independent advice. Not only independent advice but independent legal advice was readily available from a Nebraska attorney who prepared Miss Crosby's income tax returns. When the transfers were made, only Mrs. Curran and her husband were with Miss Crosby.

■ Although independent advice is not essential to uphold a transfer, the court has held that it is an important consideration. " 'Independent advice' in this connection means the showing that the donor had the benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise the donor impartially and confidentially as to the conse-

quences to himself and of his proposed benefaction." Dibel v. Meredith, 233 Iowa 545, 551, 10 N.W.2d 28, 31. See also In re Guardianship of Munsell, 239 Iowa 307, 31 N.W.2d 360; Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397. The question is not whether the donor had advice available, but whether he received advice. Luse v. Grenko, 251 Iowa 211, 219, 100 N.W.2d 170, 175 ("availability of independent advice is not the equivalent of the advice itself"); Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759. The classic statement on this point is found in Johnson v. Johnson, 196 Iowa 343, 348–349, 191 N.W. 353, 355:

It is a rare case where the dominant individual in a fiduciary relation can sustain a gift to himself by the one who is dependent upon him. Whereas the defendant had assisted her husband in his few matters of business before his illness, she had now by his illness become his sole dependence. If someone else had sought to obtain a conveyance of his property, she would have been his independent adviser and would have protected him against ill-advised action. Inasmuch as she became the beneficiary of this transaction, he was necessarily deprived of her help and advice. In such a case, equity inquires: Who was his helper? Did he have any? Did he have independent advice, legal or otherwise? If his wish had been to refuse the gift, was there anyone to stand for him and to put forward the refusal? It is incumbent upon the defendant to make some answer to these questions.

We hold on the evidence that Mrs. Curran has not sustained her burden of upholding the transfers. In so doing, we have in mind that the trial court, who saw the witnesses and listened to them, arrived at that conclusion. See Luebke v. Freimuth, 248 Iowa 58, 67, 78 N.W.2d 473, 479 ("We deem this is a proper case for us to lean heavily on the judgment of the trial court, even though we try it on appeal de

novo."); Luse v. Grenko, 251 Iowa 211, 100 N.W.2d 170.

The decree of the trial court is right.

Affirmed.

All Justices concur except REES, J., who dissents, and RAWLINGS, J., who takes no part.

REES, Justice (dissenting).

I must respectfully dissent.

The action of plaintiff-bank against Mrs. Curran to recover the deposits in joint tenancy at the time of Miss Crosby's death was in several divisions, but on trial the case turned upon the sole question as to whether the transfers of the deposits into joint tenancy were invalid because of a confidential relationship between the two women. When trial court held for the bank on that basis, Mrs. Curran appealed.

While Mrs. Curran asserts several propositions here, I find it necessary to consider the issue of confidential relationship only.

The evidence does not support a claim that the transfers into joint tenancy resulted from actual fraud or duress. The bank's claim must therefore rest on the general principle stated in Oehler v. Hoffman, 253 Iowa 631, 634, 113 N.W.2d 254, 256:

"Under our decisions, if it is clearly shown a confidential relationship existed, at the time a deed is made, between the grantor and grantees in which the latter were the dominant persons and the former the subservient one, a presumption arises the deed was procured by fraud or undue influence which the grantees must rebut by clear, satisfactory and convincing evidence."

Two inquiries are made by a court in applying this principle in a given case. First, is a confidential relationship clearly shown? If so, second, has the recipient of the transfer upheld it by clear, satisfac-tory, and convincing evidence? In the present case the first inquiry is determinative.

In connection with the first inquiry, the evidence in a particular case must show that the confidential relationship gave the recipient dominance. Kunz v. Kunz, 255 Iowa 1087, 1096, 125 N.W.2d 226, 232 (the gist of the doctrine is the presence of a dominant influence under which the act is presumed to have been done). The court said this in Albaugh v. Shrope, 197 Iowa 844, 849, 196 N.W. 743, 745:

"The essential thing, the gist of the doctrine, whether it is found in the very relationship itself, as in the case of trustee and *cestui que trust,* and situations where a strict fiduciary relation exists, or arises from any relation of a confidential nature and the surrounding circumstances of the parties, is the presence of a dominant influence, under the impulse of which the act is presumed to have been done. The presumption may arise from various relationships where, from the situation of the parties and the circumstances surrounding them, it appears that one possessed and was in a position to exercise a dominating influence over the other."

Normally the showing of trust and confidence reposed by one person in another is sufficient to make the principle apply. By virtue of the reposed confidence itself, the recipient of the transfer has influence he would not possess if the two individuals were at arm's length. See Utterback v. Hollingsworth, 208 Iowa 300, 302, 225 N.W. 419, 421 ("It is prerequisite to the application of the doctrine that faith and confidence be reposed; that the repository shall be *thereby* in a position of superiority and dominance"—italics added); Burns v. Nemo, 252 Iowa 306, 311, 105 N.W.2d 217, 220 ("A confidential relationship is present when one person has gained the complete confidence of another, purports to act with only the interest of the other party in mind, and discards any selfish advantage for himself.").

But the situation is not always so. Cases may arise in which a person reposes confidence in another, even great confidence, and yet in fact retains full decision-making to himself. Then the element of dominance is lacking. See Moorhead v. Miller, 171 N.W.2d 295 (Iowa); Jeager v. Elliott, 257 Iowa 897, 134 N.W.2d 560; Oehler v. Hoffman, 253 Iowa 631, 113 N.W.2d 254 (*supra*); Groves v. Groves, 248 Iowa 682, 82 N.W.2d 124. I believe this is such a case.

In Groves v. Groves, *supra*, at page 131 of 82 N.W.2d, this court said:

"We have been slow to define the precise limits of a confidential relationship. It is clear it may exist although there is no fiduciary relation. As Restatement, Trusts, section 2, comment b, says, it exists when one person has gained the confidence of another and purports to act or advise with the other's interest in mind. It does not arise solely from blood relationship such as between parent and child. The gist of the doctrine of confidential relationship is the presence of a dominant influence under which the act is presumed to have been done. Purpose of the doctrine is to defeat and correct betrayals of trust and abuses of confidence."

\* \* \* \* \* \*

"That a person by kind and considerate treatment induces an affectionate regard on the part of another raises no presumption of confidential relation, as the term is used in this connection, in the absence of some showing that by this means, a dominant influence was obtained over the other. Albaugh v.

Shrope, supra; Hess v. Pittman, 214 Iowa 269, 276, 242 N.W. 113."

Miss Crosby was an extraordinary person. She not only had a good mind, she had singular determination in her affairs. While Mrs. Curran made out the checks to pay Miss Crosby's debts, Miss Crosby directed how the checks were to be issued. Although Mrs. Curran kept the records at her own home, Miss Crosby recalled parts of them to her room from time to time for review. Miss Crosby, using Mrs. Curran for eyesight, studied the checks and records from the bank each month. Though she could see but poorly Miss Crosby remained in control of her financial affairs, made decisions according to her own wishes, and retained her mental acuity, to the last day.

After examining all the proofs and giving deference to the trial court's findings (notwithstanding the confidence Miss Crosby had in Mrs. Curran), I feel the record rather abidingly establishes that Miss Crosby was not subservient but that she was her own master to the end. The bank did not clearly show the presumption applies, and I would hold therefore that the presumption does not apply. Hence I would not reach the inquiry as to whether the presumption if applicable, was overcome. Much of the evidence on that inquiry would be the same as on the first inquiry, but the burden and quantum of proof would be different. See In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535; Moorhead v. Miller, 171 N.W.2d 295 (Iowa).

Since the bank's case rests on the presumption, the decree should be reversed and the bank's petition should be dismissed.